# Commonwealth v. Parmelee

C.P. of Lackawanna County, nos. 00 CR 1648, 01 CR 793.

*Michelle L. Olshefski, assistant district attorney,* for Commonwealth.
*Carl Poveromo,* for defendant.

NEALON, *J.,* June 30, 2005—The defendant, who was convicted of 61 sexual offenses involving minors and sentenced to 105 years to 210 years in state prison, has filed a petition under the Post Conviction Relief Act, 42 Pa.C.S. §§9541-9546, seeking a new trial based upon alleged ineffective assistance of counsel by his trial attorneys and appellate counsel. Based upon the evidence submitted during the PCRA hearing, the defendant has not established that his prior counsel were ineffective in their representation of him. Accordingly, for the reasons set forth below, the defendant's PCRA petition will be denied.

## I. PROCEDURAL HISTORY

On July 16, 2001, the defendant was found guilty of nine counts of rape, seven counts of involuntary deviate sexual intercourse (IDSI), nine counts of statutory sexual assault, nine counts of sexual assault, six counts of ag-

gravated indecent assault, 13 counts of indecent assault, six counts of incest and two counts of corruption of minors. Following the completion of an assessment by the Sexual Offenders Assessment Board, the defendant was sentenced on January 25, 2002, to 105 years to 210 years in state prison. Defendant filed a direct appeal challenging the refusal to allow him direct access to records of Lackawanna County Children and Youth Services concerning the three children that he was charged with sexually abusing, T.M.P. (d.o.b. 11/8/82), S.A.P. (d.o.b. 6/20/85), and N.J.P. (d.o.b. 6/17/86). Defendant also raised various claims of ineffective assistance of counsel by his trial attorneys. Finally, the defendant challenged the sufficiency of the evidence on the grounds that the victims did not identify the dates of the sexual assaults with the requisite specificity.

On May 20, 2003, the Superior Court of Pennsylvania affirmed the judgment of sentence and rejected the defendant's arguments relating to the CYS records and the sufficiency of the evidence. With respect to the defendant's claims of ineffective assistance of counsel, the Superior Court dismissed those claims without prejudice to their post-conviction collateral review as per *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002). See *Commonwealth v. Parmelee,* 829 A.2d 363 (Pa. Super. 2003). On May 13, 2004, the defendant filed the instant petition for relief pursuant to the Post Conviction Relief Act, and PCRA counsel was appointed to represent the defendant. After the defendant filed an amended PCRA petition, a PCRA hearing was conducted and testimony was received from the defendant, his trial attorneys and appellate counsel. The Commonwealth and the defendant filed their respective memoranda of law

on January 27, 2005 and April 15, 2005, at which time this matter was submitted for a decision.

## II. FACTUAL BACKGROUND

The trial testimony established that when T.M.P. was approximately 5 or 6 years old, the defendant lured her into the woods, had her disrobe and proceeded to fondle her with his hands and to rub his penis against her exposed vagina.[1] (See transcript of proceedings (T.P.) on 7/12/01, pp. 31-34.) Defendant's indecent assault of T.M.P. continued on a weekly basis until she was in sixth or seventh grade, at which time the incidents increased in severity. Beginning in that year, the defendant would not only touch T.M.P.'s exposed breasts with his hands, but he would also commit digital penetration of her genital canal by inserting his fingers into her vagina.[2] (*Id.,*

---

1. Under section 3126(a) of the Crimes Code, a person is guilty of indecent assault if he has indecent contact with a third party and (1) he does so without the complainant's consent, or (2) the complainant is less than 13 years old, or (3) the complainant is less than 16 years of age and the complainant is four or more years older. See 18 Pa.C.S. §3126(a)(1), (7), (8). Evidence is sufficient to convict a defendant of indecent assault if he fondles the victim's breasts against her wishes, see *Commonwealth v. Richter,* 450 Pa. Super. 383, 391, 676 A.2d 1232, 1236 (1996), *aff'd,* 551 Pa. 507, 711 A.2d 464 (1998), or brushes his penis against the victim's skin as such conduct constitutes "touching" of sexual or intimate parts of a person for the purpose of arousing or gratifying sexual desire. See *Commonwealth v. Grayson,* 379 Pa. Super. 55, 62, 549 A.2d 593, 596 (1988).

2. Section 3125 of the Crimes Code provides that "a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault, . . ." if (1) the person does so without the complainant's consent, or (2) the complainant is less than 16 years

pp. 36-37.) In addition, the defendant would not only penetrate T.M.P.'s vagina[3] with his penis, but would also

old and the accused is four or more years older than the complainant. 18 Pa.C.S. §3125(1), (8).

3. If a person engages in sexual intercourse with a complainant (1) by forcible compulsion, or (2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution, or (3) who suffers from a mental disability which renders the complainant incapable of consent, he is guilty of rape. 18 Pa.C.S. §3121(a)(1), (2) and (5). When determining whether evidence is sufficient to demonstrate forcible compulsion for purposes of rape, the factors to be considered include the respective physical conditions of the victim and accused, as well as the defendant's relative position of authority, domination, or custodial control over the victim. *Commonwealth v. Smolko,* 446 Pa. Super. 156, 165, 666 A.2d 672, 676 (1995). If the defendant used physical force, the threat of physical force, or psychological coercion, the "forcible compulsion" component in section 3121(a)(1) has been established. *Commonwealth v. Brown,* 556 Pa. 131, 136, 727 A.2d 541, 544 (1999). With respect to the "threat of forcible compulsion" element of section 3121(a)(2), mere verbal threats will suffice. *Commonwealth v. Montgomery,* 455 Pa. Super. 202, 209, 687 A.2d 1131, 1134 (1996). Under either subsection of section 3121(a), the uncorroborated testimony of the victim is sufficient to support a rape conviction. *Commonwealth v. Poindexter,* 435 Pa. Super. 509, 517, 646 A.2d 1211, 1214 (1994), *appeal denied,* 540 Pa. 580, 655 A.2d 512 (1995). As to the "mental disability which renders the complainant incapable of consent" in 18 Pa.C.S. §3121(a)(5), the testimony at trial revealed that T.M.P. was a special education student during this time. (T.P. 7/12/01 at p. 30.) See *e.g., Commonwealth v. Rhodes,* 510 Pa. 537, 559, 510 A.2d 1217, 1228 (1986) (if mental condition of victim is so deficient that she cannot appreciate or comprehend the nature of sexual intercourse, she is incapable of consenting to the same).

T.M.P. was, at most, 13 years old at the time that the defendant first inserted his penis into her vagina. (T.P., pp. 34-36.) Section 3122.1 of the Crimes Code entitled "Statutory sexual assault" states that "[e]xcept as provided in section 3121 (relating to rape), a person commits a felony of the second degree when that person engages in sexual intercourse with a complainant under the age of 16 years and that person is four or more years older than the complainant and the complainant

insert his penis into her anus.[4] (*Id.,* pp. 34-36.) Defendant would force T.M.P. to engage in these acts with him by physically striking her, throwing objects at her or otherwise threatening her. (*Id.,* pp. 40, 80.)

T.M.P. testified that the incidents of rape, IDSI, statutory sexual assault, sexual assault, aggravated indecent assault, indecent assault and incest continued unabated on at least a weekly basis through 2000. (*Id.,* pp. 40-54.)

---

and the person are not married to each other." 18 Pa.C.S. §3122.1. Moreover, section 3124.1 of the Crimes Code defines the offense of "sexual assault" as engaging in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent. 18 Pa.C.S. §3124.1. 18 Pa.C.S. §4302 states that a person is guilty of incest if that person knowingly has sexual intercourse with a descendant. As a consequence, defendant's act of penetrating the minor victim's vagina with his penis supported charges for rape, statutory sexual assault, sexual assault and incest.

4. A person is chargeable with involuntary deviate sexual intercourse if he engages in "deviate sexual intercourse" with a complainant (1) by forcible compulsion, or (2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution, or (3) who suffers from a mental disability which renders her incapable of consent, or (4) who is less than 16 years old and the accused is four years older. 18 Pa.C.S. §3123(a)(1), (2), (5), (7). The act of anal intercourse will support an IDSI conviction even if the penetration is slight. *Poindexter, supra* at 519, 646 A.2d at 1215. As with the charge of rape, when determining whether evidence is sufficient to demonstrate "forcible compulsion" for IDSI, the court should consider the physical conditions of the victim and accused and the position of authority or custodial control that the accused may exercise over the victim. *Smolko, supra.* The degree of force necessary to support an IDSI conviction need only be such as to establish a lack of consent and to induce the woman to submit without additional resistance. *Commonwealth v. Williams,* 294 Pa. Super. 93, 97, 439 A.2d 765, 768 (1982). However, to convict a defendant of IDSI with a person less than 16 years of age, no proof of coercion is necessary. *Commonwealth v. Doyle,* 275 Pa. Super. 373, 379, 418 A.2d 1336, 1339 (1979).

T.M.P. provided specific details as to the location of these offenses, the years when they occurred, the conditions which existed (*i.e.,* while her mother was at work and the other children were outside or in another room), and the circumstances surrounding specific instances of abuse (*e.g.,* playing a sexual board game). (*Id.,* pp. 39-50.) T.M.P. described sexual assaults in which defendant molested T.M.P. and N.J.P. simultaneously while they were in the presence of each other. (*Id.,* pp. 46-50.) As part of his modus operandi, defendant would coerce T.M.P. into performing sexual acts with him by forcing her to choose whether she or one of her younger sisters would be victimized and T.M.P. would invariably "volunteer" herself in order to spare her sisters any pain or anguish. (*Id.,* p. 50.) Starting in 1998, the defendant also began to perform cunnilingus[5] on T.M.P. and continued to do so through 2000. Whenever T.M.P. would resist the defendant, he would physically strike her (*id.,* p. 66), or threaten to kill her if she told anyone about his sexual attacks. (*Id.,* p. 43.)

S.A.P. testified that the defendant first molested her on July 11, 1998, when he woke her while her mother was at her nighttime job, took S.A.P. into his room, asked her if she "want[ed] to know why [N.J.P.] and [T.M.P.] gets treated so special," had her disrobe, and touched her breasts and vagina with his hands.[6] (*Id.,* pp. 87-90.)

---

5. For purposes of IDSI under 18 Pa.C.S. §3123(a), "deviate sexual intercourse" is considered to have occurred if one's mouth or tongue penetrates the vaginal area of another. *In Interest of J.R.,* 436 Pa. Super. 416, 426, 648 A.2d 28, 33 (1994), *appeal denied,* 540 Pa. 584, 655 A.2d 515 (1995).

6. See n.1, *supra* (discussing the crime of indecent assault).

Two days later on July 13, 1998, the defendant again awakened S.A.P. while her mother was at work, took her into his bedroom and had her perform oral sex on him.[7] (*Id.,* pp. 90-91.) During this incident, the defendant told S.A.P. "you're going to be with me forever and . . . I love you." (*Id.,* p. 92.) Shortly thereafter in the same year, the defendant began to have sexual intercourse with S.A.P.[8] (*Id.,* pp. 94-97.) From 1998 through 2000, the defendant continued to rape S.A.P., indecently assault her and force her to perform oral sex on him at least twice each week. (*Id.,* pp. 97-98.) Not unlike T.M.P., S.A.P. described incidents where the defendant engaged in sexual acts with S.A.P. and N.J.P. simultaneously. (*Id.,* pp. 98-99.) Defendant also threatened to physically harm S.A.P. if she ever informed anyone about his sexual assaults. (*Id.,* pp. 99-100.)

With respect to the charges filed in no. 01-CR-793, S.A.P. testified regarding an incident which occurred at a Wyoming County campground in 2000 when the defendant fondled S.A.P.'s breasts while N.J.P. simultaneously performed oral sex on him. (*Id.,* at pp. 100-103.) During her testimony, N.J.P. confirmed that the defendant had her perform oral sex upon him at the Wyoming

---

7. The offense of IDSI includes the act of inserting a perpetrator's penis into the mouth of a victim. *Commonwealth v. Bruner,* 364 Pa. Super. 156, 160, 527 A.2d 575, 577 (1987), *appeal denied,* 517 Pa. 614, 538 A.2d 497 (1988).

8. See n.3, *supra* (analyzing the crimes of rape, statutory sexual assault and sexual assault). In regard to the issue of "a mental disability which renders the complainant incapable of consent" in 18 Pa.C.S. §3121(a)(5) and 18 Pa.C.S. §3123(a)(5), it is important to note that S.A.P. was likewise a special education student at the time of the offenses in question. (T.P. 7/12/01, pp. 86-87.)

County campground in 2000. (*Id.*, pp. 140-42.) S.A.P. graphically described how the defendant engaged in sexual intercourse with her later that same evening.[9] (*Id.*, pp. 103-106.)

T.M.P. eventually advised her mother of the defendant's sexual assaults, and, after the children's mother contacted law enforcement authorities in Lackawanna County and Wyoming County, T.M.P., S.A.P. and N.J.P. were examined by a forensic pediatrician, Andrea Taroli M.D., of the Children's Advocacy Center of Northeastern Pennsylvania. Dr. Taroli testified that her examination of T.M.P. revealed significant scar tissue and clefts in the vagina and anus which were consistent with tears and lacerations caused by traumatic penetration.[10] (T.P. 7/13/01, pp. 38-42.) Dr. Taroli indicated that because of

---

9. N.J.P. corroborated the testimony of T.M.P. and S.A.P. with regard to those occasions on which the defendant simultaneously engaged in sexual acts with N.J.P. and one of her two sisters. (*Id.*, pp. 138-40.) N.J.P. also testified that the defendant fondled her from 1992 through 2000 and began having her perform oral sex on him in 1995. (*Id.* pp. 132-34.) However, the jury found the defendant not guilty with respect to the Lackawanna County charges involving N.J.P.

10. Dr. Taroli was permitted to testify that, based upon the histories that she secured from the children and the results of her physical examinations, she had concluded within a reasonable degree of medical certainty that all three children "had been chronically sexually abused over a period of years." (*Id.*, p. 47.) Dr. Taroli further opined that her physical findings were consistent with the histories which had been provided by T.M.P., S.A.P. and N.J.P. (*Id.*, pp. 47-48.) Based upon the "medical treatment exception" to the hearsay rule as codified in Pa.R.E. 803(4) and the holdings in *Commonwealth v. Smith,* 545 Pa. 487, 681 A.2d 1288 (1996), and *Commonwealth v. Vining,* 744 A.2d 310 (Pa. Super. 1999) (en banc), Dr. Taroli was not allowed to testify that the children had identified the defendant as the perpetrator of their injuries. (T.P. 7/13/01, pp. 4-11.)

the nature and age of the vaginal and anal scars, she was able to conclude that T.M.P.'s vaginal and anal lacerations occurred prior to the onset of puberty. (*Id.,* p. 40.)

During her examination of S.A.P. Dr. Taroli discovered evidence of extensive vaginal scarring and concavities that were attributable to traumatic penetration which had occurred in the midst of S.A.P.'s puberty. N.J.P.'s genital examination by Dr. Taroli was normal and did not reveal any disruptions of the hymen or any scarring of the anus. Dr. Taroli testified that the physical findings on examination were consistent with the histories which had been provided by the children, to wit, that T.M.P. had been subjected to vaginal and anal intercourse, that S.A.P. had been the victim of forcible, vaginal intercourse, and that N.J.P. had been compelled to perform oral sex but had not engaged in vaginal or anal intercourse with the defendant which would have caused lacerations or scarring. (*Id.,* pp. 47-48.)

T.M.P.'s testimony that the defendant began to fondle her breasts and to rub his penis against her genitalia as early as 1987 and continued to do so on at least a weekly basis through 2000, served as the basis for 10 charges (Counts 53 through 62 of the information) of indecent assault from 1989 to 2000. The seven aggravated indecent assault charges (Counts 43-49) were predicated upon the testimony that the defendant inserted his fingers in T.M.P.'s vagina during the years 1995 through 2000. The six counts of sexual assault (Counts 22-28), statutory sexual assault (Counts 33-39), and rape (Counts 1-7), were based on the vaginal intercourse which occurred from 1995 through 2000. The testimony that the defendant also had anal intercourse with T.M.P. from 1995 through 2000 supported Counts 11-14 of the informa-

tion charging the defendant with IDSI. Similarly, based upon the acts of oral sex, vaginal intercourse and anal intercourse from 1995-2000, the Commonwealth charged the defendant with four counts of incest in Counts 73-76 of the information. (T.P. 7/16/01, pp. 9-14.)

Based upon S.A.P.'s testimony that the defendant began touching her breasts and vagina on a weekly basis in 1998 and continued to do so throughout 1999 and 2000, three charges of indecent assault (Counts 63-65 of the information) were submitted to the jury. Since S.A.P. testified that she performed oral sex on the defendant from 1998-2000, the jury was presented with three counts of IDSI (Counts 15-17) for consideration. S.A.P.'s testimony regarding her vaginal intercourse with the defendant served as the grounds for three counts of rape, statutory sexual assault, sexual assault and incest. (Counts 8-10, 29-31, 40-42, 77-79.) In no. 01-CR-793, the defendant was charged with sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault, incest and corruption of minors for his 2000 conduct in Wyoming County. (*Id.,* pp. 14-16, 18-19.)

Finally, as to N.J.P., seven counts of indecent assault (Counts 66-72), one count of sexual assault (Count 32), four counts of IDSI (Counts 18-21), and three counts of incest (Counts 80-82), were submitted to the jury in no. 00-CR-1648. Relative to the Wyoming County charges in no. 01-CR-793, N.J.P.'s foregoing testimony supported the charges on IDSI (Count 1), sexual assault (Count 5), indecent assault (Count 15), and corruption of minors (Count 11). (*Id.,* pp. 17-21.)

After six days of testimony, the jury found the defendant guilty of six counts of rape, four counts of IDSI, six

counts of statutory sexual assault, six counts of sexual assault, six counts of aggravated indecent assault, 10 counts of indecent assault, and three counts of incest with regard to T.M.P. As to S.A.P., the defendant was convicted of three counts of rape, three counts of IDSI, three counts of statutory sexual assault, three counts of sexual assault, three counts of indecent assault, and three counts of incest. The jury acquitted the defendant of all 15 charges that were submitted in no. 00-CR-1648 with respect to N.J.P. In 01-CR-793, the defendant was convicted of two counts of corruption of minors vis-à-vis S.A.P. and N.J.P., but acquitted of all other charges.[11] (*Id.,* pp. 106-25.) With the exception of the nine convictions for statutory sexual assault and sexual assault which merged with the rape convictions for purposes of sentencing, the remaining convictions for IDSI (seven), aggravated indecent assault (six), indecent assault (13), incest (six), and corruption of minors (two), did not merge with any other convictions. (*Id.,* pp. 4-10.) Defendant was sentenced within the standard range of the sentencing guidelines on all offenses, and, since he received consecutive sentences for each offense, he was sentenced to an aggregate period of incarceration of 105 to 210 years. (*Id.,* pp. 40-55.)

In his original and amended PCRA petitions, the defendant alleges five instances of ineffective assistance by his trial attorneys and two claims of ineffectiveness by his appellate counsel. First, the defendant contends

---

11. The jury was entitled to find the defendant not guilty of the underlying sexual offenses, but guilty of corruption of minors. See *Commonwealth v. Bricker,* 397 Pa. Super. 457, 461-62, 580 A.2d 388, 390 (1990) (jury could find defendant guilty of corruption of a minor and not guilty of the underlying offenses of indecent assault and IDSI).

that his original counsel, Assistant Public Defender Marjorie DeSanto Barlow, Esquire, was ineffective for seeking the disclosure of records from Children and Youth Services based upon *Commonwealth v. Ritchie,* 509 Pa. 357, 502 A.2d 148 (1985), *rev'd,* 480 U.S. 39 (1987), rather than pursuant to section 6340(b) of the Child Protective Services Law, 23 Pa.C.S. §6340(b), and *Commonwealth v. Kennedy,* 413 Pa. Super. 95, 604 A.2d 1036 (1992), *appeal denied,* 531 Pa. 638, 611 A.2d 711 (1992). Defendant alternatively argues that his counsel was ineffective for not arguing that the CYS records were discoverable since their confidential nature had allegedly been waived. Additionally, based upon the absence of any docket entry or other indication in the record reflecting the in camera judge's ruling with respect to the CYS records, the defendant maintains that he is entitled to postconviction discovery of those materials under Pa.R.Crim.P. 902(E).

Second, the defendant avers that his trial counsel, Thomas Nolan, Esquire, rendered ineffective assistance by neglecting to object to certain testimony provided by Dr. Andrea Taroli referencing statements made to her by the victims during her gynecological examination of them. Third, the defendant contends that his trial counsel was ineffective for failing to request a "prompt complaint" jury instruction. Fourth, inasmuch as Attorney Nolan objected to certain testimony offered by Trooper Rebecca Warner and secured a cautionary instruction based upon that objection, the defendant asserts that his counsel was ineffective for not objecting to comparable testimony that was provided by Trooper James Gilgallon. Fifth, the defendant alleges that his trial counsel's failure to call Luke Brown, members of the Carbondale Police and repre-

sentatives of the Carbondale Area School District as witnesses constitutes ineffective assistance.

Defendant submits that his appellate counsel, Robert M. Buttner, Esquire, was ineffective for not challenging his sentence as manifestly excessive or clearly unreasonable under the circumstances. Defendant also posits that his appellate counsel was ineffective for not filing a petition for allowance of appeal with the Supreme Court of Pennsylvania after the Superior Court of Pennsylvania affirmed his judgment of sentence. Defendant requests that his right to file such a petition be reinstated nunc pro tunc.

## III. DISCUSSION

### (A) *Standard of Review*

To be eligible for post-conviction relief under section 9543(a)(2)(ii) of the PCRA, the defendant must prove by a preponderance of the evidence that his conviction resulted from ineffective assistance of counsel which so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Cox,* 581 Pa. 107, 120, 863 A.2d 536, 543 (2004) (citing 42 Pa.C.S. §9543(a) (2)(ii)); *Commonwealth v. Valentine,* no. 95 CR 1490, Nealon, J. at p. 9 (Lacka. Cty. Oct. 24, 2002), *aff'd,* 849 A.2d 611 (Pa. Super. 2004), *appeal denied,* 581 Pa. 676, 863 A.2d 1146 (2004). Defendant must also establish that his claims of error have not been previously litigated or waived. *Commonwealth v. Hall,* 582 Pa. 526, 534, 872 A.2d 1177, 1181 (2005); *Commonwealth v. Hughes,* 581 Pa. 274, 298, 865 A.2d 761, 775 (2004). "Post-convic-

tion review of claims previously litigated on appeal cannot be obtained by alleging ineffective assistance of prior counsel and by presenting new theories of relief to support previously litigated claims." *Commonwealth v. Moore,* 580 Pa. 279, 288, 860 A.2d 88, 93 (2004), *reargument denied* (Jan. 18, 2005).

The test for counsel ineffectiveness is the same under both the Pennsylvania and federal Constitutions: it is the performance and prejudice paradigm enunciated in *Strickland v. Washington,* 466 U.S. 668 (1984), see *Rompilla v. Beard,* 125 S.Ct. 2456, 2462 (U.S. 2005), and recognized in this Commonwealth in *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987). See *Commonwealth v. Williams,* 581 Pa. 57, 71, 863 A.2d 505, 513 (2004); *Commonwealth v. Knight,* no. 01 CR 545, Nealon, J. at p. 7 (Lacka. Cty. Sept. 7, 2004), *aff'd,* 880 A.2d 8 (Pa. Super. 2005). Defense counsel is presumed to be effective and the burden to show otherwise lies with the defendant. *Commonwealth v. Singley,* 582 Pa. 5, 19, 868 A.2d 403, 411 (2005); *Commonwealth v. Hayes,* no. 97 CR 495, Nealon, J. at p. 5 (Lacka. Cty. May 28, 2003), *aff'd,* 849 A.2d 605 (Pa. Super. 2004). Under the constitutional ineffectiveness standard adopted in *Pierce,* the defendant bears the burden of establishing that: (1) the underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate the defendant's interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Spotz,* 582 Pa. 207, 220, 870 A.2d 822, 830 (2005); *Commonwealth v. Cotillis,* no. 97 CR 381, Nealon, J. at p. 7 (Lacka. Cty. March 6, 2003), *aff'd,* 847

A.2d 755 (Pa. Super. 2004), *appeal denied,* 580 Pa. 710, 862 A.2d 1253 (2004).

"It is not essential to apply the *[Pierce]* test in any given order, and if the proponent of ineffectiveness fails to satisfy any one prong of the test, the entire claim fails." *Commonwealth v. DiNicola,* 581 Pa. 550, 559, 866 A.2d 329, 334 (2005); *Commonwealth v. Goodwin,* no. 99 CR 2105, Nealon, J. at p. 9 (Lacka. Cty. April 24, 2003), *aff'd,* 850 A.2d 7 (Pa. Super. 2004). Counsel cannot be deemed ineffective for failing to raise a baseless issue, and only when the underlying issue is of arguable merit must further inquiry be made into the reasonableness of counsel's actions and the prejudice that those actions may have caused. *Commonwealth v. Reyes,* 582 Pa. 317, 330, 870 A.2d 888, 896 (2005); *Valentine, supra.* Conversely, if the defendant cannot demonstrate "that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met." *Commonwealth v. Saranchak,* 581 Pa. 490, 503, 866 A.2d 292, 300 (2005).

As stated above, the defendant also maintains that his appellate counsel was ineffective in handling the defendant's direct appeal. Such "layered" claims of appellate counsel's ineffectiveness relate back to trial counsel's actions or omissions, and the ineffectiveness of trial counsel is a component of the layered claim at issue. *Commonwealth v. Brown,* 582 Pa. 461, 474, 872 A.2d 1139, 1146 (2005); *Reyes, supra; Cox, supra.* Therefore, to preserve a claim that direct appellate counsel was ineffective, the defendant must plead that direct appellate counsel was ineffective for failing to allege that trial

counsel was ineffective, and present argument and develop all three prongs of the *Pierce* test regarding the ineffectiveness of direct appellate counsel. *Brown, supra* (citing *Commonwealth v. McGill,* 574 Pa. 574, 587, 832 A.2d 1014, 1022 (2003)). The *Pierce* standard requires the defendant to prove that: (1) the underlying claim of trial counsel's ineffectiveness has arguable merit; (2) appellate counsel had no reasonable basis for failing to pursue the claims; and (3) but for appellate counsel's ineffectiveness, the result on direct appeal would have differed. *Williams, supra.* To demonstrate the "arguable merit" component of an appellate counsel ineffectiveness claim, the defendant must establish each *Pierce* prong with respect to trial counsel's performance. *Hall,* 582 Pa. at 537, 872 A.2d at 1183-84; *Cox, supra; Williams, supra* 581 Pa. at 71 n.9, 863 A.2d at 513 n.9. If the defendant fails to develop any of the three *Pierce* prongs regarding the underlying issue of trial counsel ineffectiveness, the defendant cannot establish an ineffectiveness claim as to appellate counsel. *Hall,* 582 Pa. at 537, 872 A.2d at 1184; *Reyes, supra; Cox, supra.*

Prior to trial, the defendant's trial counsel had negotiated a plea offer with the Commonwealth by virtue of which the defendant could have pled guilty to three felonies in no. 00 CR 1648 (one count of rape of T.M.P., one count of rape of S.A.P., and one count of IDSI of N.J.P.) and one felony in no. 01 CR 793 (a single count of aggravated indecent assault of S.A.P. and N.J.P.). Defendant rejected his trial counsel's recommendation that he plead guilty to those four felonies (T.P. 7/12/01, pp. 242-45), and he was subsequently convicted of 46 felonies and 15 misdemeanors. The jury convicted the defendant only of those offenses involving T.M.P. and S.A.P. which

were corroborated by gynecological evidence of vaginal or anal scarring.[12] Hence, in the face of compelling physical and testimonial evidence, the defendant's trial counsel succeeded in securing "not guilty" verdicts on 15 of the 74 charges in no. 00 CR 1648 and 12 of the 14 counts in no. 01 CR 793. Against this background, the merits of the defendant's ineffectiveness claims will be addressed.

## (B) *In Camera Review of CYS Records*

According to the testimony introduced during the PCRA hearing, Attorney Barlow filed a motion to inspect the minor victim's CYS records "under [the] authority of *Commonwealth v. Ritchie,* 509 Pa. 357, 502 A.2d 148 (1985)," and requested that the defendant be allowed "to inspect the records of Lackawanna County Children and Youth Services regarding any alleged sexual offenses purportedly committed upon [T.M.P.], [S.A.P.] and [N.J.P.] or, in the alternative, for the court to conduct an in camera inspection of said records and determine what this defendant should be allowed to receive." On January 10, 2001, Judge Michael J. Barrasse issued an order directing CYS to forward its files "to Judge Barrasse's office for an in camera inspection to determine if there are any exculpatory materials for the defendant." (Dkt. entry no. 9.) Defendant's trial and appellate counsel testified that an order was never filed denying the defendant's motion to inspect the CYS records. (T.P. 8/17/04, pp. 14, 41, 49-50, 55.) Rather, counsel

---

12. N.J.P. testified that she had been a victim of oral sex, but had never been raped or sodomized, and, for that reason, her physical examination did not reveal vaginal or anal lacerations or scarring. (T.P. 7/13/01, pp. 47-48.)

stated that they received a telephone call from Judge Barrasse's office indicating that none of the CYS records contained discoverable exculpatory material. Defendant's trial counsel asserted at the time of his cross-examination of T.M.P. that he should be allowed to question her concerning her discussions with CYS social workers since no docketed order of court expressly declared that the CYS records were immune from discovery. (T.P. 7/12/01, pp. 164-68.)

In *Ritchie*, a defendant who had been charged with sexual offenses involving his minor daughter subpoenaed the records of a child protective services agency which refused to produce the records based upon section 2215(a) (now renumbered as section 6340(a)) of the Child Protective Services Law (CPSL).[13] Former section 2215(a) of the CPSL authorized the disclosure of child protective services records to specified officials, agencies and individuals, including a "court of competent jurisdiction" but not a subject of a child abuse report. See 23 Pa.C.S. §6340(a). The trial court in *Ritchie* directed the agency to produce the CPS records for an in camera review, and, following the completion of that review, concluded that none of the CPS materials were discoverable by the defendant. See *Commonwealth v. Ritchie,* 324 Pa. Super. 557, 565, 472 A.2d 220, 224-25 (1984).

---

13. The CPSL, 11 P.S. §2201 et seq. was repealed by the Act of December 19, 1990, P.L. 1240, no. 206 §6, and recodified without material change as 23 Pa.C.S. §6301 et seq. See *Commonwealth v. Hernandez,* 420 Pa. Super. 1, 9, 615 A.2d 1337, 1341 (1992). The substance of 11 P.S. §2215 is now contained in 23 Pa.C.S. §§6339 and 6340. *V.B.T. v. Family Services of Western Pennsylvania,* 705 A.2d 1325, 1334 n.14 (Pa. Super. 1998), *aff'd,* 556 Pa. 430, 728 A.2d 953 (1999).

The defendant in *Ritchie* appealed and argued that the trial court's failure to permit inspection of the CPS records by defense counsel violated his Sixth Amendment right to confrontation. The Supreme Court of Pennsylvania agreed and held that the defendant was entitled to access the agency's entire file relating to his daughter so that determinations regarding what information might be useful to his defense could be made by his advocate rather than the trial court. *Commonwealth v. Ritchie,* 509 Pa. 357, 367-68, 502 A.2d 148, 153-54 (1985). However, the Supreme Court of the United States granted certiorari and thereafter concluded that the Pennsylvania Supreme Court erred in holding that defense counsel must be allowed to examine the CPS files. The United States Supreme Court reasoned that "[a]lthough the eye of an advocate may be helpful to a defendant in ferreting out [exculpatory] information, . . . this court has never held—even in the absence of a statute restricting disclosure—that a defendant alone may make the determination as to the materiality of the information." *Pennsylvania v. Ritchie,* 480 U.S. 39, 59 (1987). (citation omitted) Thus, the court concluded:

"We find that Ritchie's interest (as well as that of the Commonwealth) in ensuring a fair trial can be protected fully by requiring that the CYS files be submitted only to the trial court for in camera review. . . .

"To allow full disclosure to defense counsel in this type of case would sacrifice unnecessarily the Commonwealth's compelling interest in protecting its child-abuse information. If the CYS records were made available to defendants, even through counsel, it could have a seriously adverse effect on Pennsylvania's efforts to uncover and treat abuse. Child abuse is one of the most

difficult crimes to detect and prosecute, in large part because there often are no witnesses except the victim. A child's feelings of vulnerability and guilt and his or her unwillingness to come forward are particularly acute when the abuser is a parent. It therefore is essential that the child have a state-designated person to whom [s]he may turn, and to do so with the assurance of confidentiality. . . . The Commonwealth's purpose would be frustrated if this confidential material had to be disclosed upon demand to a defendant charged with criminal child abuse, simply because a trial court may not recognize exculpatory evidence. Neither precedent nor common sense requires such a result.

"We agree that Ritchie is entitled to know whether the CYS file contains information that may have changed the outcome of his trial had it been disclosed. Thus we agree that a remand is necessary. We disagree with the decision of the Pennsylvania Supreme Court to the extent that it allows defense counsel access to the CYS file. An in camera review by the trial court will serve Ritchie's interest without destroying the Commonwealth's need to protect the confidentiality of those involved in child-abuse investigations." *Id.* at 60-61.

Section 6339 of the CPSL governs the confidentiality of CYS or CPS records and states that "[e]xcept as otherwise provided in this subchapter, reports made pursuant to this chapter, including, but not limited to, report summaries of child abuse and written reports made pursuant to section 6313(b) and (c) (relating to reporting procedure) as well as any other information obtained, reports written or photographs or x-rays taken concerning alleged instances of child abuse in the possession of

the department or a county agency shall be confidential." 23 Pa.C.S. §6339. Section 6340 addresses the release of information contained in CPS or CYS reports which are deemed confidential under section 6339. As stated above, subsection (a) of section 6340 enumerates those individuals or agencies who may receive such confidential reports. See 23 Pa.C.S. §6340 (a)(1)-(15). Subsection (b) of section 6340 regulates the release of such confidential information to the subject of a child abuse report and states that "[a]t any time and upon written request, a subject of a report may receive a copy of all information, except that prohibited from being disclosed by subsection (c), contained in the statewide central register or in any report filed pursuant to section 6313 (relating to reporting procedure)." 23 Pa.C.S. §6340(b). Subsection (c) provides for protection of the identity of those persons who reported suspected abuse or cooperated in a subsequent investigation. See 23 Pa.C.S. §6340(c).

In *Kennedy,* an en banc panel of the Superior Court considered the discoverability of CPS/CYS records under former subsection (b), 11 P.S. §2215(b), which has been reenacted as 23 Pa.C.S. §6340(b). Not unlike the trial court in *Ritchie,* the lower court in *Kennedy* conducted an in camera review of the CPS files and concluded that those materials were not subject to review by the defense. *Kennedy,* 413 Pa. Super. at 98-99, 604 A.2d at 1038. On appeal, the *Kennedy* court observed that the *Ritchie* line of cases analyzed the discovery of CPS/CYS information only under subsection (a) (former 11 P.S. §2215(a) and current 23 Pa.C.S. §6340(a)) rather than pursuant to subsection (b) (former 11 P.S. §2215(b) and current 23 Pa.C.S. §6340 (b)). *Id.* at 101-102 n.5,

604 A.2d at 1039 n.5. Relying upon the plain language of subsection (b), the court held that the defendant is entitled to access to CPS/CYS records, excluding information concerning the identity of the reporter of the suspected abuse, and "that the trial court's in camera review was too restrictive." *Id.* at 107, 604 A.2d at 1042.

After the *Kennedy* decision in 1992, section 6340(b) of the CPSL "was readopted when section 3 of the Act of December 16, 1994, P.L. 1292 rewrote section 6340." *Dauphin County Social Services for Children and Youth v. Department of Public Welfare,* 855 A.2d 159, 164 (Pa. Commw. 2004). In the interim, the court in *Commonwealth v. Reed,* 435 Pa. Super. 36, 644 A.2d 1223 (1994), *appeal denied,* 540 Pa. 580, 655 A.2d 512 (1995), considered whether a defendant who was charged with sexually assaulting a minor could discover the minor's CYS file relating to her abusive relationship with her mother. Specifically, the *Reed* court addressed whether the in camera review procedure sanctioned in *Ritchie* based upon the federal Constitution was also appropriate under the broader confrontation clause rights contained in the Pennsylvania Constitution. In upholding the constitutionality of this procedure under subsection (a) of section 6340 of the CPSL, the *Reed* court found "that the balance struck by the United States Supreme Court in *Ritchie* (requiring an in camera inspection for relevant information) applies with equal force under our state confrontation clause" and "that an in camera inspection was sufficient in this case to protect both the defendant's right to meaningfully cross-examine his victim and the state's right to keep this information confidential." *Id.* at 44, 644 A.2d at 1226. However, since the defendant in *Reed* was not the subject of the CYS report sought to be

discovered, subsection (b) of section 6340 of the CPSL was not implicated in *Reed*. Therefore, *Reed* did not alter the holding in *Kennedy* that a defendant who is a subject of a child abuse report must be granted direct access to CYS reports concerning that abuse and that an in camera review of those materials by the trial court is too restrictive. Cf. *Dauphin Cty. Social Services*, 855 A.2d at 163-64 (finding that *Kennedy* did not apply to a sexual abuse perpetrator's motion to compel discovery of CPS/CYS records in an expunction hearing since expunction proceedings are civil in nature and no danger of deprivation of liberty exists); Crowley, *In Camera Inspections of Privileged Records in Sexual Assault Trials: Balancing Defendants' Rights and State Interests Under Massachusetts' Bishop Test*, 21 Am. J.L. & Med. 131, 141 (1995) (discussing *Ritchie, Kennedy* and *Reed*, and opining that under Pennsylvania law "qualified statutory privileges warrant judicial in camera inspections, while absolute statutory privileges protect a record from disclosure, absent a waiver by the victim.").

Defendant's original counsel filed a motion to inspect the CYS records based upon the Pennsylvania Supreme Court ruling in *Ritchie* which was later vacated by the United States Supreme Court. The motion to inspect predicated that request upon subsection (a) of section 6340 of the CPSL and did not demand a review of those materials by defense counsel pursuant to *Kennedy* and subsection (b) of section 6340. In the defendant's direct appeal, the Superior Court noted that since the defendant based his motion to inspect solely upon *Ritchie*, "the only relief to which Parmelee had a right, *i.e.,* in camera review by the trial court, see 480 U.S. at 60-61, is the very relief the court granted, see order of court, 1/9/01,

at 1 . . . ." *Commonwealth v. Parmelee,* no. 331 MDA 2002 at p. 12 (Pa. Super. May 20, 2003). Consequently, the Superior Court concluded:

"We need not determine whether *Kennedy* and subsection (b) may have provided Parmelee a right to relief *had he chosen to assert them.* See 23 Pa.C.S. §6340(b) (providing that 'a subject of a report may receive a copy of all information . . . contained in the statewide central register or in any report pursuant to section 6313 (relating to reporting procedure)'). *The record fails to establish, however, that he asserted such a right.* Although Parmelee filed his motion to inspect a full eight years after our decision in *Kennedy,* he did not seek relief under its mandate and did not assert a right as 'a subject of a report' to inspection by counsel under the provisions of subsection (b). Moreover, the record fails to document any attempt by Parmelee's counsel to revisit this issue in the trial court, either by way of objection to the court's order directing in camera review or by post-sentence motion. In point of fact, Parmelee first raised *Kennedy* and its analysis of subsection (b) in his brief on appeal to this court. Such delayed advocacy is plainly insufficient to preserve this point for our review." *Id.* at 12-13. (emphasis in original) (citations omitted)

Defendant contends that his original counsel and trial counsel were ineffective for failing to demand the right to personally inspect the CYS records in accordance with section 6340(b) of the CPSL and *Kennedy.* We need not determine whether this underlying claim has arguable merit or if there was a reasonable basis for agreeing to an in camera review since the defendant has not demonstrated the prejudice necessary to succeed with an ineffectiveness claim. The plain language of subsection (b)

states that a subject of a child abuse report is entitled only to that information which is "contained in the state-wide central register or in any report filed pursuant to section 6313 (relating to reporting procedure)." 23 Pa.C.S. §6340(b). Section 6336(a) of the CPSL requires the statewide central register to include the following information:

(1) The names, Social Security numbers, age and sex of the subjects of the reports.

(2) The date or dates and the nature and extent of the alleged instances of suspected child abuse.

(3) The home addresses of the subjects of the report.

(4) The county in which the suspected abuse occurred.

(5) Family composition.

(6) The name and relationship to the abused child of other persons named in the report.

(7) Factors contributing to the abuse.

(8) The source of the report.

(9) Services planned or provided.

(10) Whether the report is a founded report or an indicated report.

(11) Information obtained by the department in relation to a perpetrator's or school employee's request to release, amend or expunge information retained by the department or the county agency.

(12) The progress of any legal proceedings brought on the basis of the report of suspected child abuse.

(13) Whether a criminal investigation has been undertaken, and the result of the investigation and of any criminal prosecution. 23 Pa.C.S. §6336(a).

The information required to be contained in a report filed pursuant to section 6313 of the CPSL includes the following:

(1) The names and addresses of the child and the parents or other person responsible for the care of the child if known.

(2) Where the suspected abuse occurred.

(3) The age and sex of the subjects of the report.

(4) The nature and extent of the suspected child abuse, including any evidence of prior abuse to the child or siblings of the child.

(5) The name and relationship of the person or persons responsible for causing the suspected abuse, if known, and any evidence of prior abuse by that person or persons.

(6) Family composition.

(7) The source of the report.

(8) The person making the report and where that person can be reached.

(9) The actions taken by the reporting source, including the taking of photographs and x-rays, removal or keeping of the child or notifying the medical examiner or coroner.

(10) Any other information which the department may require by regulation. 23 Pa.C.S. §6313(c).

Much of the information required by sections 6313 (c) and 6336(a) of the CPSL was already within the personal knowledge of the defendant (*i.e.,* names, ages, addresses, and family composition of the children, the existence and status of any resulting criminal prosecutions,

etc.). The remaining available information was contained in the CYS form "CY-104," the Pennsylvania State Police reports, Dr. Taroli's reports and other materials which were produced by the Commonwealth during the course of pretrial discovery. (See T.P. 8/17/04, pp. 51-52, 67-70; Commonwealth's memorandum of law dated 1/27/05, pp. 7-11.) Furthermore, defense counsel contends that a personal review of the CYS records was warranted under section 6340(b) in order to determine whether T.M.P. had recanted any of her allegations of sexual abuse by her father. (T.P. 8/17/04, pp. 17-19.) However, during the trial, the defense did in fact introduce evidence regarding T.M.P.'s prior allegations of sexual abuse by the defendant and inappropriate touching by a school security guard, which allegations she later recanted. (See *e.g.,* T.P. 7/12/01, pp. 189-95; T.P. 7/13/01, pp. 74-75, 133-39.) But, see *Commonwealth v. L.N.,* 787 A.2d 1064, 1069 (Pa. Super. 2001) (evidence purportedly showing that child victim had previously claimed he was sexually assaulted by persons other than defendant was irrelevant in prosecution for IDSI, where defendant offered no evidence that victim's parents prompted complaint or that victim fabricated complaint to please parents). Thus, the defendant has not established that he was prejudiced by his counsel's failure to demand a personal review of CYS records in an effort to discover information required by sections 6313(c) and 6336(a) of the CPSL.

As indicated above, the jury convicted the defendant of only those offenses for which there was corroborating gynecological proof of a sexual assault. Nothing that was arguably contained in the CYS records would have altered that compelling gynecological proof. The defen-

dant simply has not demonstrated a reasonable probability that the outcome of his criminal trial would have been different if his counsel had been granted direct access to the CYS records. Since the defendant has not established the prejudice element of the tripartite ineffectiveness test, he is not entitled to post-conviction relief on that basis.

### (C) *Waiver of Confidentiality of CYS Records*

Citing *Commonwealth v. Davis,* 543 Pa. 628, 674 A.2d 214 (1996), the defendant alternatively contends that his counsel was ineffective for not arguing that the privileged nature of the CYS records had been waived in this case. To that end, the defendant alleges that "Trooper Gilgallon testified that he was provided with not only the medical report of Dr. Taroli, but also that he had obtained other information from CYS and had received their cooperation." (See defendant's pre-hearing memorandum, p. 11.)

In *Davis,* the defendant in a sexual abuse case attempted to subpoena the records of a family therapist who had provided counseling to the minor victim. The trial court quashed the subpoena and reasoned that the "family therapy records were privileged pursuant to the sexual assault counselor privilege, 42 Pa.C.S. §5945.1 (b)." *Id.* at 630, 674 A.2d at 215. The defendant argued on appeal that the statutory privilege had been waived since the victim and his family had permitted the prosecution to have access to these privileged records. The Supreme Court agreed and held that the sexual assault counselor privilege is waived when the prosecution is accorded access to records which the legislature had intended to protect as confidential and "must yield to the

defendant's rights of confrontation and compulsory process." *Id.* at 632-33, 674 A.2d at 216. See also, *V.B.T.,* 705 A.2d at 1337 n.18 (concluding that, although foster child testified about facts surrounding her abuse by her father in criminal trial which ultimately led to his conviction, it did not constitute a waiver of sexual assault counselor privilege or domestic violence counselor privilege since waiver of those privileges must be in writing), *aff'd,* 556 Pa. 430, 728 A.2d 953 (1999).

Instantly, the defendant's argument is premised upon the following testimony from Trooper Gilgallon:

"Q. What did Dr. Taroli tell you about the medical examination of the children?

"A. Dr. Taroli provided me with a report, as well as I had a telephone conversation with her. And specifically I was interested in any physical evidence related to this case. And she informed me that [T.M.P.] had injuries to her anus and her vagina. She informed me that [S.A.P.] had injuries to her vagina, and she informed me that [N.J.P.] had no injuries whatsoever.

"And from that point I contacted Children & Youth, was able to obtain some information, and naturally conducted interviews with the three girls in this matter." (T.P. 7/12/01, pp. 235-36.)

Trooper Gilgallon did not specifically testify that he was furnished with access to the CYS records for T.M.P., S.A.P. and N.J.P, nor was he called as a witness during the PCRA hearing to prove such direct access. Additionally, the record does not reflect that the victims or their mother waived any statutory privilege in writing. Furthermore, the defendant's counsel was provided with a

copy of the same report that Dr. Taroli provided to Trooper Gilgallon. (T.P. 7/13/01, pp. 3-9.)

Defendant equates Trooper Gilgallon's ability "to obtain some information" from CYS with the grant of access to CYS's records, as was the case in *Davis*. Trooper Gilgallon did not testify to that effect during the PCRA hearing, and the PCRA record does not indicate that Trooper Gilgallon or the prosecution was afforded direct access to the victims' CYS records. Moreover, the denial of the defendant's access to those records is subject to a harmless error analysis, *Davis, supra* at 633, 674 A.2d at 216-17, and for the reasons stated in section III (B) above, the defendant has not demonstrated the requisite prejudice from his inability to access the CYS records. Thus, he has not proven his entitlement to PCRA relief on this alternate ground.[14]

## (D) *Dr. Taroli Testimony*

Defendant's next claim of counsel ineffectiveness relates to Pa.R.E. 803(4) and the testimony of Dr. Andrea

---

14. Defendant further claims that he is entitled to post-conviction discovery of the CYS records pursuant to Pa.R.Crim.P. 902(E) which states, in pertinent part, that "no discovery shall be permitted at any stage of the [post-conviction] proceedings, except upon leave of court after a showing of exceptional circumstances," Pa.R.Crim.P. 902(E)(1). Accord 42 Pa.C.S. §9545(d)(2). Since the defendant has not established that he is entitled to post-conviction relief based upon the CYS records, he has not demonstrated "good cause" for the production of those materials. Cf. *Commonwealth v. Bryant,* 579 Pa. 119, 159-61, 855 A.2d 726, 750-51 (2004) (a showing of good cause under Rule 902(E)(2) requires more than just a generic demand for potentially exculpatory evidence that might be discovered if post-conviction counsel is allowed to review the requested materials).

Taroli. Rule 803(4) sets forth the "medical treatment exception" to the hearsay rule and provides for the admissibility of "[a] statement made for purposes of medical treatment, or medical diagnosis in contemplation of treatment, and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to treatment, or diagnosis in contemplation of treatment." Pa.R.E. 803(4). For a hearsay statement to be admissible under the medical treatment exception, the declarant must make the statement for the purpose of receiving medical treatment and the statement must be necessary and proper for diagnosis and treatment. *Commonwealth v. D.J.A.,* 800 A.2d 965, 976 (Pa. Commw. 2002), *appeal denied,* 579 Pa. 698, 857 A.2d 677 (2004). Although statements as to the cause of an injury are generally admissible, see *Cody v. S.K.F. Industries Inc.,* 447 Pa. 558, 566, 291 A.2d 772, 776 (1972), the Supreme Court of Pennsylvania has reasoned that statements reflecting the identity of the alleged perpetrator are not admissible since the identification of an abuser is not pertinent to medical treatment. See *Commonwealth v. Smith,* 545 Pa. 487, 495-96, 681 A.2d 1288, 1292-93 (1996). Accord *D.J.A.,* 800 A.2d at 976-77 (extending *Smith* to sexual abuse cases and precluding victim's statement to her doctor identifying defendant as alleged abuser). The Official Comment to Rule 803(4) incorporates this proscription and provides that "[s]tatements as to causation may be admissible, but statements as to fault or identification of the person inflicting harm have been held to be inadmissible. See *Smith, supra.*"

Dr. Taroli's medical reports reference the histories provided by T.M.P., S.A.P. and N.J.P. which identify the defendant as the individual who inflicted the gynecological injuries in question. Defendant's trial counsel objected to any such identification testimony, and, relying upon *Smith* and *D.J.A.,* we sustained the defense objection and barred Dr. Taroli from mentioning the same. (T.P. 7/13/01, pp. 3-11.) Hence, trial counsel succeeded in precluding any testimony under Pa.R.E. 803(4) which specifically identified the defendant as the abuser of the children.

In an isolated portion of her lengthy trial testimony, Dr. Taroli discussed the history which had been provided by T.M.P. to the effect that her sexual abuse began "when she was about 6 or 7 years old" and that "she recalled one early episode in which she and the alleged perpetrator were driving in a red van to her grandmother's house and on the way there the car was pulled over and the person took her into the woods and attempted to have sex with her." (*Id.,* p. 35.) During her testimony on the previous day of trial, T.M.P. was questioned about her first sexual abuse incident and stated:

"Q. How old were you?

"A. Like, six or five.

"Q. Okay. And tell me what happened.

"A. Me and my father went to my grandmother's house, my mom's, and on the way back we stopped.

"Q. And where did you stop, do you know?

"A. In the woods.

"Q. Do you remember what kind of car you were in?

"A. A red van." (T.P. 7/12/01, pp. 30-32.)

Defendant contends that, since T.M.P. had identified him as the operator of a red van during a return trip from the home of T.M.P.'s grandmother, his trial counsel was ineffective for failing to object under Pa.R.E. 803(4) to the above-quoted testimony by Dr. Taroli.

In compliance with *Smith,* Dr. Taroli was prohibited from testifying that the victims had identified the defendant as their abuser during the histories that they provided to Dr. Taroli. Her innocuous reference to T.M.P.'s statement that "she and the alleged perpetrator were driving in a red van to her grandmother's house" is not tantamount to an express identification of the defendant as the actual abuser. Dr. Taroli's reference to the "alleged perpetrator" as the operator of a red van does not run afoul of Rule 803(4), *Smith* and *D.J.A.* In addition, the defendant has not demonstrated a reasonable probability that the outcome of his trial would have been different if this relatively innocuous statement by Dr. Taroli had been precluded via an objection by the defendant's trial counsel. Therefore, his ineffectiveness claim predicated upon Dr. Taroli's testimony must likewise fail.[15]

### (E) *Prompt Complaint Instruction*

Defendant asserts that his trial counsel was ineffective for failing to request a "prompt complaint" instruc-

---

15. Defendant also argues that any statements made by the victims to Dr. Taroli were inadmissible hearsay since she was allegedly retained solely for the purpose of litigation rather than for purposes of diagnosis or treatment. (See defendant's pre-hearing memorandum, p. 13.) Defendant's argument is devoid of merit since Dr. Taroli testified that she examined the victims at the Children's Advocacy Center of Northeastern Pennsylvania for purposes of diagnosis and assessment. (T.P. 7/13/01, pp. 32-34.)

tion pursuant to Pa. SSJI (Crim.) 4.13A. The prompt complaint instruction is based upon the assumption that a victim of a violent assault would be expected to complain of the assault at the first available opportunity. *Commonwealth v. Snoke,* 525 Pa. 295, 300, 580 A.2d 295, 297 (1990). The purpose of the instruction "is to allow the jury to draw a negative inference as to a complainant's credibility from the fact that she did not . . . complain, under the assumption that victims of violent assaults would complain of the assault at the first available opportunity." *Commonwealth v. Prince,* 719 A.2d 1086, 1091 (Pa. Super. 1998).

The propriety of a prompt complaint instruction is determined on a case-by-case basis pursuant to a subjective standard based upon the age and condition of the victim. For example, where the victim of a sexual assault is a minor who "may not have appreciated the offensive nature of the conduct, the lack of a prompt complaint would not necessarily justify an inference of fabrication." *Commonwealth v. Jones,* 449 Pa. Super. 58, 66 n.2, 672 A.2d 1353, 1357 n.2 (1996). Some commentators have remarked that "most children do not view a sexual episode as shocking or even as particularly unusual." See comment, *A Comprehensive Approach to Child Hearsay Statements in Sexual Abuse Cases,* 83 Colum. L.Rev. 1745, 1756-57 & nn. 92-105 (1983). Similarly, if the victim suffers from a mental disability or diminished capacity, a prompt complaint instruction may not be appropriate. See *Commonwealth v. Bryson,* 860 A.2d 1101, 1104-1105 (Pa. Super. 2004). In addition, a child victim would be less likely to promptly complain if the perpetrator is in a position of confidence, *Com-*

*monwealth v. Snoke,* 525 Pa. 295, 303, 580 A.2d 295, 299 (1990), or authority or custodial control. See *Commonwealth v. Ables,* 404 Pa. Super. 169, 183, 590 A.2d 334, 340 (1991), *appeal denied,* 528 Pa. 620, 597 A.2d 1150 (1991). As the Supreme Court has observed, "[w]e are also convinced that sexually abused children may sometimes omit the horrid details of the incident for the same reasons that they do not always promptly report the abuse; fear, embarrassment and coercion by the abusing adult." *Commonwealth v. Dunkle,* 529 Pa. 168, 183, 602 A.2d 830, 837 (1992).

In the case sub judice, TM.P. and N.J.P. were both minors and special education students at the time of their sexual assaults. (T.P. 7/12/01, pp. 30, 56, 87, 110.) Defendant used his position of confidence, authority and custodial control to manipulate the victims and intimidate them from disclosing their sexual assaults. Defendant coerced T.M.P. to remain silent about the abuse by advising her that he "could go to jail" or would kill T.M.P. and her sisters if she revealed the abuse. (*Id.,* pp. 33-34, 43.) Since the defendant had physically abused the victims and their mother on prior occasions, T.M.P. testified that she did not divulge the abuse because she "was afraid and . . . didn't want to get hurt or anything." (*Id.,* p. 80.) S.A.P. stated that the defendant "scared" her because she had "seen him hurt my mom physically and mentally" and "hurt my brothers and sisters physically." (*Id.,* p. 100.) S.A.P. further testified that, after the defendant would sexually assault her, he would tell her that he loved her and that "he could get in trouble" and would "hurt [her] bad" if she told anyone. (*Id.,* pp. 100, 133.)

A jury charge will be deemed erroneous only "if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue." *Potochnick v. Perry,* 861 A.2d 277, 283 (Pa. Super. 2004). A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. *Atwell v. Beckwith Machinery Co.,* 872 A.2d 1216, 1222 (Pa. Super. 2005); *Angelo v. Diamontoni,* 871 A.2d 1276, 1279 (Pa. Super. 2005). To constitute reversible error, "a jury instruction must be shown to have been not only erroneous, but also harmful to appellant." *Commonwealth v. Owens,* 437 Pa. 64, 78, 649 A.2d 129, 136 (1994), *appeal denied,* 540 Pa. 612, 656 A.2d 118 (1995).

Since the victims were minor children with diminished mental capabilities and the defendant exercised a position of confidence, dominion and authority over them, it is highly questionable whether a prompt complaint instruction was warranted in this case. See *Ables, supra* at 183-84, 590 A.2d at 341 (finding that it was not error for the court to refuse to charge on prompt complaint since the minor victim's "uncle" "told her not to tell anyone lest he get in trouble" and "the minor victim was under sufficient duress to legitimately explain her delay in complaining."). During the PCRA hearing, the defendant's trial counsel articulated legitimate strategical reasons for not having requested such an instruction. (See T.P. 8/17/04, pp. 59-61, 83-85.) Moreover, the jury was instructed regarding the credibility of all witnesses, including the victims and the defendant. (T.P. 7/16/01, pp. 63-68, 101.) Examining the charge as a whole, the omission of a prompt complaint instruction did not amount to funda-

mental error, nor did the absence of that charge prejudice the defendant. Accordingly, the defendant has not established all three elements of the *Pierce* test with regard to his counsel's failure to request a prompt complaint instruction.

### (F) *Trooper Gilgallon Testimony*

Defendant avers that his trial counsel was ineffective for neglecting to object to particular testimony offered by Trooper Gilgallon despite the fact that defense counsel later objected to similar testimony by Trooper Warner and obtained a cautionary instruction in the process. Defendant contends that both witnesses attempted to bolster or vouch for the credibility of the victims in contravention of *Commonwealth v. Randall,* 758 A.2d 669, 678 (Pa. Super. 2000), *appeal denied,* 564 Pa. 707, 764 A.2d 1067 (2000). Defendant submits that, although the curative instruction provided with regard to Trooper Warner's testimony was "possibly sufficient to overcome the prejudice caused by Trooper Warner, [it] was not sufficient in addressing that testimony of Trooper Gilgallon." (Defendant's pre-hearing memorandum, p. 20.)

The trial testimony revealed that Trooper Gilgallon of the Dunmore barracks in Lackawanna County investigated the charges in no. 00 CR 1648 relating to the Lackawanna County incidents, whereas Trooper Warner of the Tunkhannock barracks in Wyoming County handled the prosecution of the Wyoming County charges. (See T.P. 7/12/01, pp. 229-31; T.P. 7/13/01, pp. 13-15.) Trooper Gilgallon testified that after he received Dr. Taroli's report and discussed it with her, he interviewed T.M.P., S.A.P. and N.J.P. and "compared what they were

saying to the physical evidence which Dr. Taroli gave me about [T.M.P.] and [S.A.P.] and the lack of physical evidence which was consistent with what [N.J.P.] said." (T.P. 7/12/01, p. 237.) Defendant's trial counsel objected when the prosecutor questioned Trooper Gilgallon why that information was "significant in your investigation," and after that objection was sustained, Trooper Gilgallon was asked to describe the "next step" in his investigation. (*Id.*, pp. 237-38.) In response, Trooper Gilgallon stated that "[t]he next step actually was to evaluate the information that I got from the doctor, as well as the children, and to gather the facts which help me determine the credibility and develop a probable cause, which ultimately resulted in the arrest of the defendant on June 14, 2000." (*Id.*, p. 238.)

Trooper Warner testified that, following her review of Trooper Gilgallon's initial report concerning the Lackawanna County offenses, she likewise reviewed Dr. Taroli's report and thereafter interviewed the three victims. Trooper Warner indicated that, based upon her investigation, she decided to file a criminal complaint charging the defendant with several Wyoming County offenses. (T.P. 7/13/01, pp. 15-17.) In that vein, Trooper Warner testified that she "weighed their statements and the incidents described by them with the physical evidence that was reported in Dr. Taroli's report, which was absolutely consistent with the stories they had described" and subsequently swore out an affidavit of probable cause to charge the defendant with certain offenses. (*Id.*, pp. 16-17.) After defendant's trial counsel objected to this testimony on the grounds that Trooper Warner was vouching for the credibility of the victims' statements and ex-

pressing an opinion on the defendant's guilt, (*id.,* pp. 19-22), we issued the following cautionary instruction:

"Members of the jury, just to clarify a point and make sure that you did not misunderstand the purpose of Trooper Warner's testimony. As you may recall from the testimony you've heard to date, the mother, Karen Parmelee, had placed a call to the Carbondale Police and they in turn had advised the Pennsylvania State Police, specifically the Lackawanna County barracks, and that is why Trooper Gilgallon testified what Carbondale had done, because, in interviewing members of the Parmelee family, they realized that there were allegations that were being made not only about matters which allegedly occurred in Carbondale, but also involving other areas of Lackawanna County outside of Carbondale.

"Therefore, for jurisdictional reasons they brought the Pennsylvania State Police into the case. Trooper Gilgallon testified as to what his investigation involved and that there were also allegations being made with regard to the Stoney Mountain Campground located in Wyoming County, and, for that reason, Trooper Warner from the barracks up in Wyoming County had then been brought, or I should say Wyoming jurisdiction had been brought, into the investigation.

"Trooper Warner then testified about the fact of her interviews and then filing charges. As I mentioned to you even before opening statements, the fact that charges themselves have been filed is not proof of the defendant's guilt and it is merely an accusation that's being made by the Commonwealth. Obviously, you have to determine, based on the evidence that is introduced, the testimony, and any other evidence that might be presented to you,

whether the Commonwealth has satisfied its burden of proving the defendant guilty beyond a reasonable doubt. We don't allow witnesses to testify as to whether they believe that a particular defendant is guilty or not guilty of a certain charge.

"And that is because that's what we have juries for. It's the jurors who are going to make that determination. I don't make it. The lawyers don't make it. The witnesses don't make it. That's solely your prerogative. So please understand that, again, the purpose of Trooper Warner's testimony, and the testimony of Trooper Gilgallon as well, concerning the fact that they filed charges, is not to be considered as evidence of the defendant's guilt. They were merely explaining the course of the investigation and the jurisdictional issues that had to be resolved which is why we have not only Lackawanna County charges being considered in this case, but also some from Wyoming County as well." (*Id.,* pp. 22-24.)

Contrary to the defendant's contention, Trooper Gilgallon's testimony did not constitute improper bolstering or vouching for the victims. Such improper bolstering or vouching occurs only "(1) [w]hen the prosecution places the prestige of the government behind the witness by personal assurances of the witness' veracity; and (2) when the prosecution indicates that information which is not before the jury supports the witnesses' testimony." *Randall,* 758 A.2d at 676 (quoting *Commonwealth v. Lam,* 453 Pa. Super. 497, 507-508, 684 A.2d 153, 158 (1996), *appeal denied,* 548 Pa. 645, 695 A.2d 784 (1997)). As indicated by the trial transcript, no such conduct occurred during the testimony of Trooper Gilgallon or Trooper Warner.

Furthermore, even assuming arguendo that the troopers had expressed a personal opinion regarding the veracity of the victims, any possible prejudice was eliminated by the cautionary instruction. See *e.g., Commonwealth v. Hartey,* 424 Pa. Super. 29, 35, 621 A.2d 1023, 1026-27 (1993), *appeal denied,* 540 Pa. 611, 656 A.2d 117 (1994). The above-quoted instruction was provided to the jury during the testimony of Trooper Warner and one day after the testimony of Trooper Gilgallon. In fact, this instruction augmented an earlier cautionary instruction which was furnished during Trooper Gilgallon's testimony. (See T.P. 7/12/01, pp. 231-35.) In order for us to find that the defendant was prejudiced by his trial counsel's failure to object to Trooper Gilgallon's testimony, we would have to conclude that the jury completely ignored the foregoing cautionary instructions. We are unable to make such an unjustified finding, and for that reason, the defendant is unable to establish the prejudice element of the *Pierce* test.

### (G) *Failure To Call Additional Witnesses*

Defendant's final allegation of ineffectiveness by his trial counsel concerns counsel's decision not to call Luke Brown and unidentified members of the Carbondale police and Carbondale Area School District as witnesses. In this Commonwealth, "ineffectiveness for failing to call a witness will not be found where a defendant fails to provide affidavits from the alleged witnesses indicating availability and willingness to cooperate with the defense." *Commonwealth v. Khalil,* 806 A.2d 415, 422 (Pa. Super. 2002), *appeal denied,* 572 Pa. 754, 818 A.2d 503 (2003); *Knight, supra* at p. 8;

*Cotillis, supra* at p. 9. Defendant has not produced any affidavits or sworn testimony from Luke Brown or the purported representatives of the Carbondale police and Carbondale Area School District confirming their availability and willingness to cooperate with the defense. Thus, the defendant's claim of ineffectiveness for failure to call those individuals as witnesses may be dismissed summarily.

Even if the defendant had provided the requisite affidavits, his ineffectiveness claim would nonetheless fail. To prevail on a claim of ineffectiveness for failure to call a witness, the defendant must demonstrate that: (1) the witness existed; (2) the witness was available; (3) trial counsel was informed of the existence of the witness or should have known of the witness' existence; (4) the witness was prepared to cooperate and would have testified on the defendant's behalf; and (5) the absence of the testimony prejudiced the defendant. *Commonwealth v. Malloy,* 579 Pa. 425, 449, 856 A.2d 767, 782 (2004); *Commonwealth v. Miller,* 868 A.2d 578, 581-82 (Pa. Super. 2005). To establish the prejudice component of this test, the defendant must show that the absent witness' testimony would have been helpful in establishing his innocence or asserted defense. *Khalil,* 806 A.2d at 422-23 n.3; *Commonwealth v. Fink,* 791 A.2d 1235, 1241 n.3 (Pa. Super. 2002).

Defendant asserts that Luke Brown would have provided testimony regarding the defendant's work schedule so as to support his claim that he possessed a limited opportunity to sexually abuse T.M.P., S.A.P. and N.J.P. at the times alleged. (T.P. 8/17/04, p. 93.) Defendant's trial counsel indicated that he "made a determination that

Luke Brown was not going to be a helpful witness" since, among other matters, he would testify that the defendant attempted to commit suicide once T.M.P., S.A.P. and N.J.P. advised their mother about the sexual abuse. (*Id.,* pp. 65-66, 79-80.) Moreover, the defense did in fact introduce testimony concerning the defendant's work schedule through other witnesses. (*Id.,* p. 92.) As a consequence, the defendant has not established that the absence of Luke Brown's testimony prejudiced him so as to deny him a fair trial.

Defendant avers that members of the Carbondale police and Carbondale Area School District would have testified regarding T.M.P.'s recanted allegations of earlier abuse by her father and offensive touching by a school security guard. However, evidence of those instances was introduced through other witnesses, including T.M.P. herself. (T.P. 7/12/01, pp. 189-95; T.P. 7/13/01, pp. 74-75, 133-39; T.P. 8/17/04, pp. 64-65, 70-73.) Any additional testimony from police or school district representatives would merely have been cumulative, and the absence of such further testimony did not prejudice the defendant.[16]

### (H) *Appellate Challenge to Sentence*

Defendant claims that his appellate counsel was likewise ineffective for failing to challenge the defendant's sentence on direct appeal on the ostensible grounds "that the sentence of 105 years to 210 years was so excessive

---

16. Defendant insisted upon testifying in his own defense (T.P. 7/13/01, pp. 115-16), and provided compelling evidence against himself, including the statement that "I do know how to lie" and "I have taught [T.M.P., S.A.P. and N.J.P.] how to lie." (*Id.,* pp. 160-61.)

as to constitute cruel and unusual punishment under the federal and Pennsylvania Constitutions." (See defendant's pre-hearing memorandum, p. 22 n.3.) At the time of the defendant's sentencing, we found that the defendant's nine convictions for statutory sexual assault and sexual assault merged with his nine rape convictions, but that the seven IDSI convictions, six aggravated indecent assault convictions, 13 indecent assault convictions, six incest convictions, and two corruption of minors convictions did not merge for purposes of sentencing. (T.P. 1/25/02, pp. 5-9.) Therefore, although the defendant was convicted of 61 sexual offenses, he was only sentenced on 42 offenses.

With respect to defense counsel's request that concurrent sentences be imposed, we noted that, although the victims testified that the sexual assaults occurred once or twice *per week* during the years in question, the defendant was only charged with committing one offense *per year* for the relevant time period. (*Id.,* pp. 22-23.) We further stated that if consecutive sentences were not imposed for each offense, it would ignore the fact that each instance of abuse occurred. (*Id.,* pp. 25-26, 39.) In fashioning an appropriate sentence, consideration was given to the physical damage which was inflicted to the victims' vaginas and ani, the emotional trauma sustained, the defendant's use of threats to manipulate the victims, his exploitation of T.M.P. by forcing her to choose whether she or her younger sisters would be used by the defendant for sex, and his exertion of superior influence over the special education students. (*Id.,* pp. 37-39.) Consecutive sentences were also deemed appropriate since "the victims were particularly vulnerable due to

their youth and intelligence level" and the defendant was in a familial "position of care, trust and confidence" in relation to the victims. (*Id.,* p. 52.) Additionally, the defendant expressed no remorse for the victims' harm and suffering and instead characterized himself as a victim. (*Id.,* pp. 52-53.) For all these reasons, the defendant was sentenced within the standard range of the sentencing guidelines for each offense, and, inasmuch as consecutive sentences were imposed, the defendant received an aggregate sentence of 105 to 210 years incarceration. (*Id.,* pp. 40-51.)

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. *Commonwealth v. Robertson,* 2005 WL 1115478, *9, ¶33 (Pa. Super. 2005). To prove an abuse of discretion, the defendant "must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Commonwealth v. Hyland,* 2005 WL 1252746, *5, ¶13 (Pa. Super. 2005). A challenge to the discretionary aspects of a sentence requires the defendant to raise a substantial question as to the appropriateness of the sentence, which would permit the appellate court to accept the appeal as to that issue. *Commonwealth v. Kimbrough,* 872 A.2d 1244, 1262 (Pa. Super. 2005); *Commonwealth v. Tirado,* 870 A.2d 362, 365 (Pa. Super. 2005).

A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a spe-

cific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Hyland, supra* at \*4, ¶11. The Superior Court has recently remarked that "the imposition of consecutive rather than concurrent sentences lies within the sound discretion of the sentencing court, and a challenge to the imposition of consecutive sentences simply does not raise a substantial question." *Commonwealth v. Lloyd,* 2005 WL 1503630, \*5, ¶15 (Pa. Super. 2005) (citing *Commonwealth. v. Graham,* 541 Pa. 173, 184, 661 A.2d 1367, 1373 (1995)). However, an earlier Superior Court decision suggests that, if the defendant's aggregate consecutive sentences result in a virtual life sentence, it may raise a substantial question whether the total sentence was "so manifestly excessive as to constitute too severe a punishment." *Commonwealth v. Dodge,* 859 A.2d 771, 776 (Pa. Super. 2004). See also, *Commonwealth v. Diaz,* 867 A.2d 1285, 1288 (Pa. Super. 2005). Suffice to say that the determination of whether a particular issue raises a substantial question is to be evaluated on a case-by-case basis. *Hyland, supra; Commonwealth v. Twitty,* 2005 WL 1230501, \*3, ¶7 (Pa. Super. 2005).

In imposing sentence, the Sentencing Code requires the trial court to consider the following factors: (1) the protection of the public; (2) the gravity of the offense in relation to the impact on the victim and community; and (3) the rehabilitative needs of the defendant. *Commonwealth v. Cortez,* 860 A.2d 1045, 1051 (Pa. Super. 2004) (citing 42 Pa.C.S. §9721). If the sentencing court had the benefit of reviewing the pre-sentence investigation report prior to sentencing, it is presumed that the court was aware of the relevant information regarding the

defendant's character and weighed those considerations along with the other statutory factors. *Kimbrough,* 872 A.2d at 1264-65; *Tirado,* 870 A.2d at 368. During the defendant's sentencing, we confirmed that we had reviewed the PSI report and later referenced various information contained therein during the course of the sentencing proceedings. (T.P. 1/25/02, pp. 10-11, 19, 34, 36-40, 52-53.) The record also reflects that the statutory factors were considered in imposing sentence upon the defendant. (*Id.,* pp. 14-18, 22-26, 36-53.)

In *Dodge,* a majority of the court found that a "total sentence of 58 1/2 to 124 years for, primarily, property crimes" was clearly unreasonable. The *Dodge* court observed that none of the crimes at issue involved violence toward a person and that "the court imposed a minimum sentence of 52 years for 37 counts of receiving personal property, all property crimes, many of which involve property of little monetary value." *Dodge,* 859 A.2d at 781. (footnote omitted) Although the Superior Court vacated that sentence as "clearly unreasonable," it cautioned that "[w]e do not purport to announce any sort of blanket, per se rule covering all cases involving the application of consecutive sentences." *Id.* at 782.

In contrast, the court in *Commonwealth v. Boyer,* 856 A.2d 149 (Pa. Super. 2004), *appeal granted in part,* 582 Pa. 661, 868 A.2d 450 (2005), held that an aggregate sentence of 26 to 100 years was not manifestly excessive. In *Boyer,* the defendant was convicted of terroristic threats, unlawful restraint and simple assault, as well as various property offenses. In rejecting the defendant's challenge to his sentence, the *Boyer* court reasoned:

"Here, the trial court reviewed the pre-sentence investigation report, imposed minimum sentences in the standard range of the sentencing guidelines, imposed maximum sentences that were clearly permissible, and chose to order the sentences be served consecutively. We cannot find that the trial court abused its discretion." *Id.* at 154.

The *Dodge* court distinguished the *Boyer* holding on the grounds that, in Dodge's case, "the record reflect[ed] no violence against any person and no criminal activity paralleling that of *Boyer.*" *Dodge,* 859 A.2d at 782 n.13.

Defendant was convicted of a multitude of crimes involving sexual violence to minor children, and those offenses are more akin to the crimes of violence in *Boyer* than to the property offenses in *Dodge.* Not unlike the trial court in *Boyer,* we reviewed the PSI report, imposed minimum sentences within the standard range of the sentencing guidelines, and opted to order that the sentences be served consecutively. Ergo, there was no valid basis for the defendant's appellate counsel to challenge those sentences on direct appeal. Since counsel cannot be deemed ineffective for failing to pursue a meritless claim, the defendant's ineffectiveness allegations relative to his appellate counsel will be denied.

### (I) *Failure To Request Supreme Court Review*

In his final claim of ineffectiveness, the defendant asserts that his appellate counsel was ineffective for failing to file a petition for allowance of appeal with the Supreme Court of Pennsylvania. (T.P. 8/17/04, pp. 27-32, 90-92.) As the defendant notes, he is not required to show that the Supreme Court would have granted re-

view had his counsel timely filed a petition for allowance of appeal in order for his ineffective assistance claim to be cognizable. See *Commonwealth v. Liebel,* 573 Pa. 375, 382-85, 825 A.2d 630, 634-36 (2003). *Liebel* has been interpreted as eliminating the defendant's "need to prove prejudice the third prong of an ineffectiveness claim." *Commonwealth v. Ellison,* 851 A.2d 977, 980 (Pa. Super. 2004), *appeal denied,* 580 Pa. 710, 862 A.2d 1253 (2004).

Nevertheless, if appellate counsel's failure to file a requested petition for allowance of appeal is justified, then there is no arguable merit to the claim that counsel was ineffective for failing to do so. *Id.* Defendant may establish that appellate counsel's failure was unjustified by demonstrating that his appellate arguments have "some level of merit" such that "there is some chance that the Supreme Court would have taken his case, *i.e.,* his claims are not completely frivolous." *Id.* at 980-81. Based upon the foregoing discussion, the defendant's appellate counsel was justified in not filing a petition for allowance of appeal since the defendant's appellate arguments, which were unanimously rejected by the Superior Court, did not possess the requisite level of merit. Therefore, the defendant's request that his right to file such a petition be reinstated nunc pro tunc will be denied.

## ORDER

And now, June 30, 2005, upon consideration of the defendant's motion for collateral relief under the Post Conviction Relief Act, the testimony and evidence submitted by the parties, and the legal arguments of coun-

sel, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that the motion of defendant Robin D. Parmelee for relief under the Post Conviction Relief Act, 42 Pa.C.S. §§9541-9546, is denied.