870 A.2d 888

**COMMONWEALTH of Pennsylvania, Appellee**

**v.**

**Angel REYES, Appellant.**

Supreme Court of Pennsylvania.

Submitted July 8, 2002.

Decided March 30, 2005.

320

Christina Allison Swarns, Philadelphia, for Angel Reyes, appellant.

Amy Zapp, Harrisburg, Patricia N. Holsten, for the Com. of PA, appellee.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Chief Justice CAPPY.

In this capital case, Appellant Angel Reyes was convicted of, *inter alia,* first degree murder and sentenced to death. Appellant filed a second amended petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546. Presently, Appellant appeals from that portion of the Order of the Court of Common Pleas of Delaware County that denied him collateral relief from his convictions.[1] For the reasons that follow, we affirm the PCRA court's order.

---

1. In its order, the PCRA court granted Appellant collateral relief from his sentence, vacating the sentence of death and ordering a new penalty hearing. This portion of the PCRA court's order is not before us.

The relevant facts and procedural history are as follows. Appellant and Julia Martinez lived together and were the natural parents of the decedent, four year old Marcia Reyes. By a previous relationship, Julia had older sons, Javier and Louis, who were a source of dissension between Appellant and Julia. After an altercation with Javier, Appellant threatened Julia that she would find Marcia in the river with her throat slashed if Julia ever had him arrested. On May 25, 1993, upon learning that Louis had visited with Julia and Marcia, Appellant left his home, taking Marcia with him. That evening, Appellant presented himself at the Chester Police Station and stated to both Sergeant Lawrence Platt and Detective Walter Loveland that he killed his daughter. Later, Appellant told the Sergeant that he put Marcia in the water. Appellant also made incriminating statements regarding his involvement in Marcia's death to Detective Robert Blythe. The next day, Marcia's body was discovered in the Delaware River, about four miles from Appellants home. The coroner determined that Marcia drowned and classified her death as a homicide.

Appellant was arrested and charged with first degree murder, 18 Pa.C.S. § 2502(a), aggravated assault, 18 Pa.C.S. § 2702(a)(1), and endangering the welfare of children, 18 Pa.C.S. § 4304.

Under *Miranda v. Arizona,* 384 U.S. 436, 384 U.S. 436, 16 L.Ed.2d 694 (1966), Appellant filed a motion to suppress all of the statements that he made to the police. The Honorable Frank T. Hazel presided at the suppression hearing. While the statements Appellant made to Detective Blythe were suppressed, the statements he made to Sergeant Platt and Detective Loveland were held to be admissible.

Following a bench trial before Judge Hazel, Appellant was found guilty on all charges in November of 1993. Inasmuch as the Commonwealth sought the death penalty, a jury was empaneled for sentencing. The jury returned a verdict of death on January 13, 1994, finding one aggravating factor, that the victim was a child under twelve years of age, 42 Pa.C.S. § 9711(d)(16), and no mitigating factors. Appellant filed motions for reconsideration of sentence and/or a new sentence,

which were denied. Appellant filed a supplemental motion for a new sentencing trial, which was also denied. On July 19, 1994, the trial court imposed a sentence of death for the first degree murder conviction and a consecutive 2 ½ to 5 year term of imprisonment for the endangering the welfare of children conviction upon Appellant. Daniel Finnegan, Esquire and Christopher McGrane, Esquire were Appellant's trial and penalty phase counsel.

On July 31, 1996, on direct appeal, this Court affirmed the judgment of sentence. *Commonwealth v. Reyes*, 545 Pa. 374, 681 A.2d 724 (1996). At that time, Appellant was represented by Attorneys Patrick Connors and William Ruane. Appellant filed a petition seeking a writ of certiorari in the United States Supreme Court.

On November 21, 1996, while the writ of certiorari was still pending, Appellant filed a *pro se* PCRA petition. In February of 1997, new counsel was appointed, and Appellant filed an amended PCRA petition. Both of these petitions were withdrawn. The Supreme Court denied Appellant's petition for a writ of certiorari on April 14, 1997. *Reyes v. Commonwealth*, 520 U.S. 1174, 117 S.Ct. 1445, 137 L.Ed.2d 551 (1997). Appellant's death warrant was signed on May 6, 1997. On May 21, 1997, Appellant filed an emergency motion for stay of execution and asked that his prior PCRA petitions be reinstated. Appellant's emergency motion was granted on May 23, 1997. New counsel was appointed, and on January 23, 1998, Petitioner filed a second Amended PCRA petition (the "Petition"). Beginning on July 29, 1999 and ending on November 20, 2000, the PCRA court, with Judge Hazel again presiding, held evidentiary hearings. By a clarifying order dated July 26, 2001, the PCRA court vacated Appellant's death penalty and granted him a new sentencing hearing, but denied Appellant relief from his convictions. This appeal followed.[2]

2. This court has jurisdiction over Appellant's petition as we directly review the denial of post-conviction relief in death penalty cases under 42 Pa.C.S. § 9546(d). Our standard of review is whether the findings of the PCRA court are supported by the record and are free from legal

█ In order to be eligible for PCRA relief, a petitioner must establish by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated grounds in 42 Pa.C.S. § 9543(a)(2), and that the allegation of error has not been previously litigated or waived. 42 Pa.C.S. § 9543(a)(3). Under 42 Pa.C.S. § 9544(a)(2), an issue is previously litigated "if the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue[.]" Under 42 Pa.C.S. § 9544(b), an issue is waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." Moreover, following *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693 (1998), the relaxed waiver doctrine no longer applies in PCRA appeals cases.

█ Presently, Appellant presents the court with five issues.[3] We begin with the two issues that Appellant raises regarding the admission at trial of the incriminating statements he made to Sergeant Platt and Detective Loveland as evidence of his guilt.

█ The first such issue relates to our determination on direct appeal that the trial court misapplied the corpus delicti rule.[4] *Reyes*, 681 A.2d at 730. Presently, Appellant focuses

error. *Commonwealth v. Abu–Jamal*, 574 Pa. 724, 833 A.2d 719, 723 (2003). We note that Appellant's Petition was timely under 42 Pa.C.S. § 9545(b)(1), having been filed within one year of the date that the judgment became final under § 9545(b)(3).

3. The PCRA court determined that the boilerplate and general allegations of entitlement to PCRA relief that Appellant included in his statement of matters complained of on appeal were waived. We agree that such allegations are not reviewable. Like the PCRA court, we will only review the issues that Appellant asserted with specificity.

4. The corpus delicti rule begins with the tenet that a criminal conviction may not be based upon a defendant's extra-judicial confession unless there is independent evidence that a crime was in fact committed. *Reyes*, 681 A.2d at 727. Under Pennsylvania law, the application of the rule occurs in two phases. In the first phase, the court determines whether the Commonwealth has proven the corpus delicti of the crimes charged by a preponderance of the evidence. *Id.* If so, the confession of the defendant is admissible. *Id.* In the second phase, the rule requires that the Commonwealth prove the corpus delicti to the

on our decision to affirm his judgment of sentence on direct appeal, despite the trial court's error. *Id.* at 732. Relying on *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), Appellant contends that a violation of the corpus delicti rule is a constitutional error of structural proportions that is not amenable to harmless error.[5] Thus, according to Appellant, this court erred on direct appeal when it applied a harmless error type of analysis to a corpus delicti rule violation. Appellant further asserts that the PCRA court's conclusion that the issue he raises was previously litigated is erroneous.

By way of background, at trial, Appellant took exception to the quantum of proof that the trial court required of the Commonwealth in establishing the corpus delicti, arguing that the trial court did not require proof beyond a reasonable doubt. *See supra,* n. 4. Appellant also excepted to the trial court's ruling that since the Commonwealth proved the corpus delicti to its satisfaction, it, as factfinder, could consider Appellant's incriminating statements on the issue of his guilt.

In his Statement of Matters Complained of on Appeal, Appellant reasserted these issues. In its responsive opinion dated December 7, 1994, the trial court gave alternative holdings on Appellant's corpus delicti challenge. First, the trial court concluded that the Commonwealth met the burden of proof on the corpus delicti that Pennsylvania law requires and that, therefore, Appellant's incriminating statements were properly admitted and considered. Alternatively, the trial court concluded that even without the inculpatory statements,

factfinder's satisfaction beyond a reasonable doubt before the factfinder is permitted to consider the confession in assessing the defendant's innocence or guilt. *Id.* at 729. *But see Commonwealth v. Persichini,* 558 Pa. 449, 737 A.2d 1208 (1999) (equally divided court as to whether the two tiered approach to the corpus delicti rule should be abandoned).

**5.** In *Sullivan,* the Supreme Court held that a constitutionally deficient reasonable doubt instruction is not amenable to harmless error because there can be no factual findings made by the jury beyond a reasonable doubt on which an appellate court can ground its harmless error analysis and the error is a structural defect in the trial mechanism, which defies analysis by harmless error standards. 508 U.S. at 279–82, 113 S.Ct. 2078.

the evidence of record was sufficient to prove beyond a reasonable doubt both the corpus delicti of the crimes charged and Appellant's guilt.

On direct appeal, Appellant argued that the trial court ignored the two-tiered burden of proof requirement of the corpus delicti rule and erred, therefore, in considering his incriminating statements. This court determined that Appellant was correct, concluding that "although the trial court employed the proper standard for admitting his judicial statements, the trial court failed to utilize the correct [beyond a reasonable doubt] standard regarding its consideration of the statement[s]." *Reyes*, 681 A.2d at 730. At the same time, however, we denied Appellant relief, determining that "even excluding the alleged erroneously admitted inculpatory statements of Appellant . . . the circumstantial evidence alone was sufficient to convict Appellant of murder." *Id.* In doing so, we agreed with the trial court's alternative holding, stating that "we [were] satisfied that there was sufficient evidence to support the trial court's conclusion that the Commonwealth proved Appellant's guilt beyond a reasonable doubt even excluding Appellant's extra-judicial statements." *Id.*

In now asserting that this court should not have applied a harmless error analysis to the trial court's corpus delicti rule violation, Appellant is challenging this court's review and affirmation of the trial court's alternative holding in its December 7, 1994 opinion. That is to say, the error that Appellant presently raises as to the nature and consequences of a corpus delicti rule violation originated in the trial court. Inasmuch as Appellant could have raised the trial court's alternative holding as contrary to *Sullivan* on direct appeal, but did not, the issue he raises in his Petition is waived under the PCRA. *See* 42 Pa.C.S. § 9544(b). Thus, the PCRA court was correct in not reaching the issue on the merits.[6]

6. In discussing this issue in his Brief, Appellant also declares that this court's agreement on direct appeal with the trial court's alternative holding is erroneous on the merits. Such a challenge amounts to an issue that is previously litigated within the meaning of 42 Pa.C.S. § 9544(a)(2). *See Albrecht*, 720 A.2d at 703 ("The requirement that a

■■■ Appellant raises a second challenge to the trial court's consideration of the incriminating statements as evidence of his guilt. This second challenge is brought under *Miranda*, 384 U.S. at 436, 86 S.Ct. 1602, and is based on Appellant's assertion that the statements were erroneously admitted since he made them without having been apprised of his *Miranda* rights. Appellant claims that the trial court erred in not granting his motion to suppress the statements; that trial counsel were ineffective in litigating the issue of suppression; and that appellate counsel were ineffective for not raising the denial of the suppression motion on direct appeal. The PCRA court reached the merits of Appellant's claims and denied them. It is clear, however, that the issue of trial court error that Appellant raises was waived under 42 Pa.C.S. § 9544(b), not having been raised on direct appeal. It is also clear that Appellant's allegations of counsels' ineffectiveness in this regard were previously litigated under 42 Pa.C.S. § 9544(a)(2). As discussed above, this court ruled on the admission and consideration of these same statements on direct appeal. We have repeatedly held that a petitioner cannot obtain post-conviction review of claims that were previously litigated on appeal by alleging ineffective assistance of prior counsel and presenting new theories of relief. *Commonwealth v. Bracey*, 568 Pa. 264, 795 A.2d 935, 939 n. 2 (2001).

■■■ We turn now to Appellant's remaining issues. Preliminarily, we note that in connection with these issues, Appellant alleges trial court error and/or the ineffectiveness of trial counsel. Under the PCRA, such allegations are waived, since they could have been raised at a prior point in these proceedings, but were not. 42 Pa.C.S. 9544(b). With respect to these allegations, however, Appellant also asserts that his appellate counsel were ineffective. In this way, Appellant raises "layered" claims of ineffective assistance of counsel, which have

claim for PCRA relief not be previously litigated would be rendered a nullity if this court could be compelled to revisit every issue decided on direct appeal upon the bald assertion that that decision was erroneous.")

not been waived. *See Commonwealth v. Rush,* 576 Pa. 3, 838 A.2d 651, 656 (2003). Therefore, we will address them.

Generally speaking, the test for counsel's ineffectiveness is well-settled. Under *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987), a defendant must establish (1) that the underlying issue has arguable merit; (2) that counsel did not have a reasonable basis for his or her actions; and (3) that prejudice resulted from counsel's performance. *Id.* at 973. It is also well-settled that counsel will not be deemed ineffective for failing to raise a baseless issue and that it is only when the underlying issue is of arguable merit that further inquiry must be made into the reasonableness for counsels actions and the prejudice that counsels actions may have caused. *See Commonwealth v. Hutchinson,* 521 Pa. 482, 556 A.2d 370, 372–73 (Pa.1989).

Recently, this court set forth a specific framework for the analysis of layered ineffectiveness claims. This framework bears repeating. "[I]n order for a petitioner to properly raise and prevail on a layered ineffectiveness claim, he must **plead, present** and **prove**" the ineffectiveness of appellate counsel. *Commonwealth v. McGill,* 574 Pa. 574, 832 A.2d 1014, 1022 (2003) (emphasis in original). To preserve the layered claim, a petitioner must plead in his PCRA petition that appellate counsel was ineffective for failing to raise that trial counsel was ineffective. He must also present argument on and develop all three prongs of the test set forth in *Pierce* regarding the ineffectiveness of appellate counsel. *Id.*

Inasmuch as a layered claim of appellate counsel's ineffectiveness necessarily relates back to the actions of trial counsel, the ineffectiveness of trial counsel is a component of the layered claim that is at issue. *Id.*; *Rush,* 838 A.2d at 656. That is, the three-pronged *Pierce* test as to the ineffectiveness of trial counsel is the arguable merit prong of the *Pierce* test for a layered claim of appellate counsel's ineffectiveness. *Id.* Thus, if the petitioner fails to prove any of the three *Pierce* prongs as to trial counsel's ineffectiveness, he will have failed

to establish the arguable merit prong of the layered claim of appellate counsel's ineffectiveness, and the claim fails. *Id.*

Moreover, this court's review of a layered claim proceeds only where the petitioner has adequately pled and presented the ineffectiveness of trial counsel. *McGill,* 832 A.2d at 1023. Where the petitioner has pled, argued, and proved the underlying issue of trial counsel's ineffectiveness, a remand to the PCRA court may be appropriate in a case that was pending in the appellate courts at the time that *McGill* was issued to allow the petitioner the opportunity to correct any errors he made with respect to the pleading and presentation of his layered claim of appellate counsel's ineffectiveness. *Id.* at 1024. Where, however, the petitioner fails to plead, present and prove all three prongs of the *Pierce* test regarding the underlying issue of trial counsel's ineffectiveness, a remand is unnecessary because petitioner is unable to establish the requisite arguable merit prong of his layered claim of appellate counsel's ineffectiveness. *Id.*

With these principles and this framework in mind, we turn to Appellant's layered claims of appellate counsels' ineffectiveness. Initially, we find that Appellant properly pled the layered claims and properly presented the *Pierce* test as to trial counsel's ineffectiveness. Accordingly, we will review them.

Appellant's first layered claim arises out of his assertion that he was denied his constitutional right to a fair trial and that trial counsel were ineffective for failing to raise Appellant's inability to understand English and for failing to ask that all proceedings be translated simultaneously into Spanish. *See Commonwealth v. Pana,* 469 Pa. 43, 364 A.2d 895, 898 (1976) (stating that a criminal defendant's ability to understand what is being communicated at legal proceedings and the availability of an interpreter to assist him implicates his right to confront witnesses against him; his right to consult with his attorney and the right to be present at his own trial.)

Appellant's layered claim depends on two contentions—that he did not comprehend spoken English in a meaningful way and that the safeguards that were put into place at trial were inadequate to ensure his understanding of the proceedings. We conclude, however, that Appellant's contentions are belied by the record. The evidence shows: that Appellant was provided with a Spanish interpreter who was continuously seated next to him throughout the trial proceedings; that Appellant accepted the interpreter and used him as he saw fit; that the trial court repeatedly inquired into Appellant's understanding of the proceedings; that Appellant communicated effectively in English with the trial court at the suppression hearing and during the colloquy regarding his waiver of a jury trial; that Appellant stated in open court that he understood what was said to him in English; that the attorneys who represented Appellant at trial testified that they had had no problem communicating with their client in English; that Appellant did not testify at the PCRA hearings as to any difficulty in understanding the proceedings; and that the expert opinions that Appellant introduced at the PCRA hearings to the effect that he did not have a working command of the English language stood in direct contrast to his own words at various trial proceedings. Thus, inasmuch as the issue that underlies trial counsels' ineffectiveness lacks arguable merit, trial counsel cannot be deemed ineffective. Therefore, Appellant's first layered claim of appellate counsels' ineffectiveness fails.

In his second layered claim, Appellant asserts that trial counsel were ineffective for recommending to him that Judge Hazel preside over his bench trial and for not seeking Judge Hazel's recusal. According to Appellant, Judge Hazel's involvement in his case should have ended after he decided Appellant's motion to suppress inasmuch as he was exposed to all of Appellant's incriminating statements, not just the statements that were admitted at trial.

We have stated that recusal is required only if substantial doubt as to the judge's ability to preside impartially has been demonstrated, *see Commonwealth v. Miller*, 541 Pa. 531, 664

A.2d 1310, 1321 (1995), and that an argument for recusal that is grounded only on the assertion that a trial judge was involved in a pre-trial proceeding is insufficient. *See Commonwealth v. Boyle*, 498 Pa. 486, 447 A.2d 250, 252 (1982) ("The mere participation by the presiding judge in an earlier stage of the proceeding neither suggests the existence of actual impropriety nor provides a basis for a finding of the appearance of impropriety.").

Here too, the record belies the arguable merit of Appellant's assertion that trial counsel were ineffective. There is no evidence to suggest that Judge Hazel was unable to preside at Appellant's trial in an impartial manner. Moreover, prior to the start of trial, Judge Hazel conducted a colloquy during which he reminded Appellant that he had heard the incriminating statements that would not be admitted as evidence at trial; advised Appellant of the opportunity to request another jurist; and confirmed that it was Appellant's informed preference that he continue to preside. In that Appellant cannot establish that trial counsel were ineffective, his second layered claim also fails.

Appellant's third and final layered ineffectiveness claim is premised on the assertion that he was induced into waiving his right to a jury trial on the issue of guilt by trial counsels' incorrect advice that if he made such a waiver, he would be entitled to choose unilaterally a non-jury penalty phase proceeding. The only evidence of record on this point is from trial counsel who testified otherwise, stating that he advised Appellant that the Commonwealth could and most likely would choose to proceed before a jury at the penalty stage. Thus, having failed to show trial counsel's ineffectiveness, Appellant's final layered claim fails.[7]

7. In denying Appellant relief on his claims of appellate counsel's ineffectiveness, the PCRA court did not analyze them as layered claims. Rather, the PCRA court analyzed Appellant's allegations in terms of trial court error/or ineffectiveness of trial counsel. Inasmuch as we agree with the PCRA court that Appellant is not entitled to relief on these claims, there is no need for a remand for further proceedings in the PCRA court.

Accordingly, the order of the PCRA court denying Appellant collateral relief under the PCRA from his convictions is affirmed.

Justice CASTILLE files a concurring opinion in which Justice EAKIN joins.

Justice SAYLOR files a concurring opinion in which Justice NIGRO joins.

Justice CASTILLE concurring.

I join the Majority Opinion. I write separately only to address the proper contours of the previous litigation provision of the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.*

In his Concurring Opinion in this case, Mr. Justice Saylor adverts to a statement in *Commonwealth v. Uderra*, 862 A.2d 74 (Pa.2004), in which the Court, after noting differences among Justices concerning the scope of the PCRA's previous litigation provision, suggested that, "[a]ll Justices are in alignment ... that at least where the Court's reasoning and holding on direct appeal encompass the claim sought to be raised on collateral review, *and there is no irrefutable, manifest error in the disposition,* the previous litigation doctrine should be deemed to apply." *Id.* at 93–94 (*citing Commonwealth v. Stokes*, 576 Pa. 299, 839 A.2d 226, 235–36 (Saylor, J. dissenting)) (emphasis mine). The underscored clause was not necessary to the ultimate decision in *Uderra, see id.* at 94, and I write now to note my respectful disagreement with that aspect of the formulation of the statutory previous litigation bar.

The PCRA's previous litigation provision contains no "irrefutable, manifest error" exception and, in my view, this Court has no power to simply "relax" the provision, thereby eviscerating salutary principles of finality, whenever a new majority of the Court concludes that it would or should have decided the issue differently on direct appeal.[1] I realize that, notwith-

1. While it may sound narrow and lofty, the "irrefutable, manifest error" standard in fact will always amount to nothing more than majority rule,

standing the lack of any statutory exception to the PCRA's previous litigation ban, a Majority of the Court recently has negated the statute and granted relief upon a previously litigated claim. *See Commonwealth v. Cruz,* 578 Pa. 263, 851 A.2d 870 (2004). Indeed, the *Cruz* Court took the extreme measure of raising and granting relief upon the previously litigated issue—a suppression issue unrelated to guilt or innocence—*sua sponte.* I registered my dissent in *Cruz,* and I continue to believe that the Court's evisceration of the previous litigation statute was unnecessary, erroneous, and unwise in that case. *See id.* at 878–82 (Castille, J., dissenting).[2]

It seems the temptation to rewrite the PCRA to accommodate shifting judicial tastes is again in the ascendancy. Thus, in addition to the suggestion that courts may engage in an *ad hoc* negation of the PCRA's previous litigation provision to serve the judicial preferences of the day, the Court also has recently rewritten the PCRA waiver provision to serve similar *ad hoc* ends. *See Commonwealth v. Santiago,* 855 A.2d 682 (Pa.2004) (plurality). In another case, the Court undertook to "reinstate" the PCRA petition of a capital petitioner despite lacking jurisdiction to do so, as the petitioner had not appealed the dismissal of his petition following his knowing and voluntary waiver of PCRA review. *See Commonwealth v. Saranchak,* 570 Pa. 521, 810 A.2d 1197 (2002).[3] The Court's patchwork quilt of select judicial exceptions to clear PCRA language has led to bizarre results. Under this Court's jurisprudence, if an issue involves the PCRA time-bar, a petitioner is generally out of court (unless he is a capital defendant falling into Saranchak's favored judicial circumstance): no exceptions beyond those specified in the PCRA will apply; and this is so even if the time for seeking collateral review has

as *Cruz, infra,* proves. I would conjecture that, in practice, it will always be the decisions of since-departed Justices (or since-departed majorities) which will seem to be irrefutably and manifestly erroneous in retrospect—as was the case in *Cruz.*

**2.** Mr. Justice Eakin did not participate in the decision in *Cruz.*

**3.** In both *Santiago* and *Saranchak,* this author, joined by Mr. Justice Eakin, expressed disagreement with the Court's construction of the PCRA.

passed due solely to the dereliction of counsel, and even if that dereliction leads to a circumstance where both the right to direct appeal and the right to PCRA review is thereby extinguished. *See Commonwealth v. Robinson,* 575 Pa. 500, 837 A.2d 1157 (2003); *Commonwealth v. Murray,* 562 Pa. 1, 753 A.2d 201 (2000); *Commonwealth v. Fahy,* 558 Pa. 313, 737 A.2d 214 (1999); *Commonwealth v. Peterkin,* 554 Pa. 547, 722 A.2d 638 (1998). If the General Assembly's PCRA standards truly are merely advisory in the context of waiver, previous litigation, and Saranchak's circumstance, why is there no room for similarly creative judicial exceptions for non-capital defendants—many of whom are serving life sentences? The Court having jettisoned the notions of separation of powers and judicial restraint, perhaps such exceptions are next on the agenda. As is, this Court's unmoored and improvised PCRA jurisprudence provides only spotty guidance to counsel and to the judges below who must apply these devised precepts of post-conviction review.

Justice EAKIN joins this concurring opinion.

Justice SAYLOR concurring.

Although I concur in the result, I disagree with the majority's conclusion that Appellant's ineffectiveness claim premised upon the admission of his inculpatory statements in violation of the rule enunciated in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is previously litigated. A claim is previously litigated where there has been a ruling "on the merits of the issue[.]" *See* 42 Pa.C.S. § 9544(a)(2).[1] On direct appeal, Appellant challenged the standard for determining whether a *corpus delicti* had been established arguing, in particular, that the trial court judge had improperly consid-

---

1. In its simplest form, the inquiry is whether resolution of the current claim on the merits would effectively overrule the prior decision. *See generally Commonwealth v. Uderra,* 580 Pa. 492, 523–26, 862 A.2d 74, 93–94 (2004) (observing that, "at least where the Court's reasoning and holding on direct appeal encompass the claim sought to be raised on collateral review, and there is no irrefutable, manifest error in the disposition, the previous litigation doctrine should be deemed to apply").

ered his admissions prior to being convinced beyond a reasonable doubt that the underlying crime was established. *See Commonwealth v. Reyes*, 545 Pa. 374, 382, 681 A.2d 724, 727 (1996). Presently, the claim concerns whether trial and appellate counsel rendered ineffective assistance by failing to properly challenge and litigate whether Appellant's incriminating statements should have been suppressed because they were elicited during custodial interrogation when he had not been advised of his constitutional rights under the Fifth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution. While I recognize that both the issue on direct appeal and that currently before the Court involve the inculpatory statements made by Appellant, the prior ruling did not implicate the legal and factual grounds necessary for determining the latter. Accordingly, as did the PCRA court, I would address the arguable merit of the underlying claim.

In this regard, *Miranda* warnings are required only where a suspect is subjected to custodial interrogation, *see Commonwealth v. Smith*, 575 Pa. 203, 224, 836 A.2d 5, 18 (2003), with the standard for custody entailing an assessment of objective circumstances surrounding the interrogation. *See Stansbury v. California*, 511 U.S. 318, 322–23, 114 S.Ct. 1526, 1529, 128 L.Ed.2d 293 (1994). The focus of the test, however, is whether the individual was deprived of his freedom of movement in any significant manner or was placed in a circumstance in which he reasonably believed that his freedom was restricted. *See Commonwealth v. Chacko*, 500 Pa. 571, 577, 459 A.2d 311, 314 (1983). As the PCRA court found, Appellant arrived at the Chester Police Department on his own and, upon encountering one of the officers, announced, "you want me, I just killed my daughter." When asked for further details, Appellant stated, "I won't tell you." After being advised that he would not be taken into custody without more facts, Appellant was interviewed in the shift commander's office, where he continued to withhold any details while insisting that he be arrested. During this time, Appellant was not restrained in

any way and was permitted to leave the office.[2] At certain points in the interview, Appellant said, "I won't tell you anything today, I'll tell you tomorrow," explaining that, "I'm going to put pressure on them like they put pressure on me." Finally, Appellant blurted out, "I put her in the water," and thereafter prompted the officers to speculate concerning any additional information, ultimately offering as a location, "Eddystone." Notably, Appellant did not testify at the suppression hearing, trial, or PCRA hearing and, as the PCRA court reasoned, the circumstances surrounding the statements do not indicate a custodial interrogation; indeed, the attending officer repeatedly advised Appellant that he would not be taken into custody absent more information. Accordingly, I would affirm this claim based upon the PCRA court's disposition.

Justice NIGRO joins this concurring opinion.

---

**2.** On two occasions, Appellant left the office unaccompanied to use a restroom.