J-S45043-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KRISTIAN CHARLES BURNS | : | |
| | : | |
| Appellant | : | No. 557 MDA 2024 |

Appeal from the PCRA Order Entered January 29, 2024
In the Court of Common Pleas of Union County Criminal Division at
No(s): CP-60-CR-0000074-2019

BEFORE: OLSON, J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED: APRIL 1, 2025**

Kristian Charles Burns appeals from the order denying his Post Conviction Relief Act ("PCRA") petition. 42 Pa.C.S.A. §§ 9541-9546. Burns claims that the order should be vacated and the case remanded to allow him to file an amended PCRA petition raising a claim of ineffective assistance of PCRA counsel. We vacate the order and remand for further proceedings.

This Court has previously stated the factual history of this case:

> On May 12, 2018, [Burns] encountered two old high school friends, Kara Eberle and Tessy Aikey, at a bar in Milton, Pa. and spent the remainder of the night consuming alcohol, marijuana, and cocaine. N.T., 3/2/20, at 45, 48-51, 68-69. In the early morning hours, Eberle, who had volunteered to be the designated driver for Aikey earlier that evening, agreed to drive [Burns] home as well. N.T. at 47. After she dropped off Aikey, she continued toward the rural home of [Burns'] father, but she was having some difficulty because she did not know the way. N.T. at 52-54. According to Eberle, she accepted [Burns'] offer to take over [driving], and [Burns] eventually crashed the car into a tree at a high

rate of speed causing the two to be ejected from the car and sustain serious injury. N.T. at 56-59.

[Burns] was charged . . . and a pivotal issue at the jury trial regarded the identity of the driver at the time of the accident. The Commonwealth presented evidence intended to prove [Burns] caused the accident by reckless operation of the vehicle, as [Burns] had turned down a "loose gravel" road with a posted 40 mile per hour speed limit and accelerated to between 74 and 80 miles per hour in disregard of Eberle's panicked pleas for him to slow down. N.T. at 56-57, 147. Eberle claimed she was so afraid at that moment that she undid her seatbelt and prepared to jump from the vehicle. N.T. at 56.

The Commonwealth also presented both DNA test results of blood recovered from inside the vehicle and expert testimony on accident reconstruction analysis to establish [Burns'] location in the driver's seat at the time of the accident. N.T. at 145-146, 155. Additionally, post-accident [blood alcohol concentration ("BAC")] results and toxicology screenings were offered to corroborate Eberle's testimony that [Burns] drove recklessly and without due regard for the dangerous conditions. Specifically, [Burns'] BAC of .284% and positive results for marijuana and cocaine in his toxicology screening provided evidence of his impairment, while, in contrast, Eberle's BAC was .074%, below the legal limit. N.T. at 67-69.

In his defense, [Burns] presented an expert witness, Justin P. Schorr, Ph.D., whose accident reconstruction analysis led him to offer his opinion to a reasonable degree of professional certainty that Eberle was the driver.

A jury found [Burns] guilty of aggravated assault by vehicle while DUI ("AA-DUI"), aggravated assault by vehicle, DUI—highest rate, accidents involving death or injury while not licensed, and driving while suspended DUI related with alcohol in his system.

The trial court imposed an aggregate sentence of 54 months plus 90 days to 132 months' incarceration, which comprised a standard range sentence of 54 to 120 months for AA-DUI, a concurrent sentence of 16 to 84 months for accidents involving death or injury while not licensed, and a

> consecutive sentence of 90 days to 12 months for driving while suspended while greater than .02% BAC.

*Commonwealth v. Burns*, No. 1356 MDA 2020, 2021 WL 4452930, at *1-2 (Pa.Super. filed Sept. 29, 2021) (unpublished mem.). We affirmed the judgment of sentence. *See id.* at *1.

Burns filed a timely PCRA petition in January 2022, followed by an amended petition in March 2023. Burns raised several claims of ineffective assistance of trial counsel, including counsel's:

1. failure to renew a continuance request after being provided 95 new photographs from the accident scene;

2. failure to cross-examine Eberle on her inconsistent statements;

3. failure to effectively cross-examine Eberle and the Commonwealth's DNA expert, Samantha Newhart;

4. failure to request a mistrial after the Commonwealth published information showing that Burns did not have a valid license since 2011;

5. failure to object to the Commonwealth's DNA expert testifying by video;

6. failure to call the bartender who witnessed Eberle drinking and the defense investigator, Detective Max Martin;

7. failure to advise Burns of his right to testify.

*See* Amended Petition for Post Conviction Relief, filed 3/20/23, at ¶¶ 17-58. The court held a hearing on July 24, 2023, where Dr. Justin Schoor, Detective Max Martin, Burns, and Burns' trial counsel testified. The court denied Burns' petition and this timely appeal followed.

Burns raises the following issues:

I.    Whether the January 29, 2024 order denying [Burns] PCRA relief should be vacated and this matter remanded to the PCRA court to permit [Burns] to file an amended PCRA petition alleging the ineffective assistance of prior PCRA counsel, Katherine E. McShane, Esq. for her failure to advance and to develop the following claims of trial counsel ineffectiveness?

A.  Trial Counsel Brian Ulmer, Esq. of the Union County Public Defendant's Officer provided grossly ineffective assistance which substantially prejudiced [Burns] by failing to retain a defense accident reconstruction expert in a timely manner, obtain available and highly relevant evidence in discovery and provide said expert with this material, and prepare said expert for his testimony on behalf of the defense in an aggravated assault by vehicle while DUI case where the driver of the vehicle was disputed and the only witness called by the defense at trial was the defense accident reconstruction[ist] who, due to defense counsel's inaction and inattention, was deprived of the opportunity to fully review the facts of the case, conduct a thorough analysis of all available evidence, and was unprepared to testify at trial;

B.  Attorney Ulmer provided ineffective assistance in that he failed to call two available witnesses to impeach the testimony of alleged victim Kara Eberle;

C.  Trial counsel Brian Ulmer provided ineffective assistance in that he failed to effectively cross[-]examine alleged victim Kara Eberle;

D.  Trial counsel Brian Ulmer provided ineffective assistance in that he failed to effectively cross[-]examine Chief Investigator PSP Trooper Brian Watkins;

E.  Defense counsel Brian Ulmer, Esq. provided ineffective assistance by failing [to] exclude the testimony of Commonwealth DNA expert Samantha Newhart who was unavailable until the afternoon of the second day of trial;

> F. Defense counsel Brian Ulmer, Esq. was ineffective in that he induced [Burns'] waiver of his right to testify in his own defense under false pretenses.

Burns' Br. at 7-8 (unnecessary capitalization and footnote omitted).

"Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination and whether the PCRA court's decision is free of legal error." **Commonwealth v. Lawson**, 90 A.3d 1, 4 (Pa.Super. 2014).

Burns challenges the effectiveness of PCRA counsel in failing to present certain claims of the alleged ineffectiveness of trial counsel. He acknowledges that he is raising new claims for the first time on appeal. However, he cites **Commonwealth v. Bradley**, where the Court held "that a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." 261 A.3d 381, 401 (Pa. 2021). He further maintains that remand is appropriate "for further development of the factual record," which "would lead to the development of issues of material fact concerning the ineffective stewardship of both PCRA counsel and trial counsel[.]" Burns' Br. at 33 (citing **Commonwealth v. Parrish**, 273 A.3d 989, 1006 (Pa. 2022).

When a claim of PCRA counsel's ineffectiveness is raised for the first time on appeal, the case should be remanded "where there are material facts at issue concerning [claims challenging counsel's stewardship] and relief is not plainly unavailable as a matter of law[.]" **Bradley**, 261 A.3d at 402 (internal

quotation marks omitted) (citation omitted) (alteration in original). Additionally, when the record needs further development or "the PCRA court [needs] to consider such claims as an initial matter[,]" remand may be in order. *Id.* However, remand may not be necessary if the record before this Court is "sufficient to allow for disposition of any newly-raised ineffectiveness claims[.]" *Id.*

An appellant suggesting that remand is appropriate must "provide more than mere boilerplate assertions of PCRA counsel's ineffectiveness." *Id.* (citation and internal quotation marks omitted). The appellant should "explain[] to this Court how further development of the factual record would satisfy all three prongs of [the ineffectiveness of counsel] test as to each of prior PCRA counsel's alleged failings." *Commonwealth v. Lawrence*, 309 A.3d 152, 155–56 (Pa.Super. 2024). In other words, the appellant should present "the claims to this Court as if they were being pled in the PCRA petition itself." *Id.* at 156.

"Counsel is presumed to have rendered effective assistance." *Commonwealth v. Lesko*, 15 A.3d 345, 374 (Pa. 2011). A petitioner may overcome this presumption by pleading and proving by a preponderance of the evidence that:

> (1) [T]he underlying legal claim has arguable merit;
>
> (2) [C]ounsel had no reasonable basis for [the] action or inaction; and
>
> (3) Appellant suffered prejudice because of counsel's action or inaction.

*Commonwealth v. Maddrey*, 205 A.3d 323, 327 (Pa.Super. 2019) (quoting *Commonwealth v. Presley*, 193 A.3d 436, 442 (Pa.Super. 2018)). Prejudice occurs when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Commonwealth v. Spotz*, 84 A.3d 294, 312 (Pa. 2014) (quoting *Commonwealth v. King*, 57 A.3d 607, 613 (Pa. 2012)). A reasonable probability is one "sufficient to undermine confidence in the outcome of the proceeding." *Id.* (quoting *Commonwealth v. Ali*, 10 A.3d 282, 291 (Pa. 2010)). An ineffectiveness claim fails if the petitioner does not meet all three prongs of the ineffectiveness test. *See Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010).

"Where a petitioner alleges multiple layers of ineffectiveness, he is required to plead and prove, by a preponderance of the evidence, each of the three prongs of ineffectiveness relevant to each layer of representation." *Parrish*, 273 A.3d at 1003 n.11. As to PCRA counsel's ineffectiveness, if the petitioner fails to prove any prong of the ineffectiveness test related to trial counsel, "he will have failed to establish the arguable merit prong of the layered claim of [PCRA] counsel's ineffectiveness, and the claim fails." *Commonwealth v. Reyes*, 870 A.2d 888, 896 (Pa. 2005).

**Defense Expert – Dr. Schorr**

Burns maintains that PCRA counsel was ineffective for failing to raise the issue of "trial counsel's failure to seek and obtain crucial discovery, retain an expert in a timely manner, communicate with and provide the expert with

discovery, obtain an expert report that included analysis of all materials available to defense counsel, and prepare with the defense expert for presentation at trial." Burns' Br. at 35. Burns notes that these issues are raised for the first time on appeal and claims that remand is necessary for "further development of the PCRA evidentiary record . . . to include documents, written witness statements, affidavits, and the development of issues through additional witness testimony not appearing of record." *Id.* at 36.

At Burns' request, Dr. Schorr produced an updated report after the PCRA hearing. Dr. Schorr states that trial counsel did not give him copies of the vehicle inspection photographs and the EMT reports until February 28, 2020, and the scene photographs until March 2, 2020. *See* Burns' Br. at Appendix L ("DJS Report"). He received these documents after Dr. Schorr had submitted his report to trial counsel. *Id.* at 46. Dr. Schorr states that he has since reviewed this evidence and it is now his opinion that "[t]here is no physical evidence or other data (other than the statement of Ms. Eberle) which places Kristian Burns in the driver's seat when the subject collision occurred." *Id.* at DJS Report, p. 7. Additionally, he states that "[a]ll the physical evidence (and analysis thereof) is consistent with Ms. Eberle having been operating the Ford (which she owned) at the time of the collision." *Id.*

Burns maintains that trial counsel was ineffective because "all the material upon which this updated report is based was available to trial counsel as early as July 19, 2019 and should have been provided to Dr. Schorr long before trial." *Id.* at 45. He points out that the public defender's office retained

Dr. Schorr on February 14, 2020, and trial counsel did not speak with Dr. Schorr until February 28, 2020, two days before trial started. *See id.* at 44. Burns asserts that he was prejudiced by trial counsel's failure because "Dr. Schorr's updated report demonstrates that the full review and analysis of all available evidence would have materially changed his expert opinion." *Id.* at 49. Burns presents three "examples of prejudice" resulting from trial counsel's failure to provide Dr. Schorr with all evidence:

1) Dr. Schorr's original report concludes that the possible ejection portals through which the vehicle occupants could have been thrown from the vehicle included both front doors of the vehicle, the right-side window, and the front windshield. However, upon review of the scene photographs, Dr. Schorr determined that the **only** available ejection portals were the broken passenger side window and door. *See* July 23, 2024 DJS Report at Appendix L, ¶¶ 3, 4.

2) The EMT reports, unavailable to Dr. Schorr when he wrote his original report, include the weight of both Mr. Burns and Ms. Eberle. Dr. Schorr's updated report includes analysis of the event data from the vehicle's weight sensor in the front passenger seat. The passenger was classified as a "small adult." Mr. Burns exceeds the "small adult" weight classification by less than 10%. Ms. Eberle exceeded this weight classification by nearly 35%. Therefore, the weight classification of the passenger is consistent with Mr. Burns being the passenger and Ms. Eberle being the operator. *See* July 23, 2024 DJS Report at Appendix L, ¶ 8.[1]

3) There is no physical evidence or other data (other than the statement of Ms. Eberle) that places Mr. Burns in the driver's seat when the collision occurred. Rather, all physical evidence and analysis thereof is consistent with

---

[1] The jury never heard this information because the weights of Ms. Eberle and Mr. Burns were unknown to Dr. Schorr at the time of trial.

> Ms. Eberle having been operating her own vehicle at the time of the collision. This is supported by the weight classification data, the nature of the injuries to both occupants, the points of rest of the occupants, the damage to the vehicle, and even the DNA found (and misinterpreted) by the police inside the vehicle. *See* July 23, 2024 DJS Report at Appendix L, ¶ 11.

*Id.* at 47-48.

Burns argues that the problem was not that the Commonwealth provided late discovery but rather that trial counsel "did not obtain and provide Dr. Schorr any discovery materials to aid in preparation of an expert report prior to trial." *Id.* at 48-49 (emphasis removed). Burns asserts that had Dr. Schorr given his updated opinion, it "would have affected the outcome of the trial and, in all probability, resulted in the acquittal of Mr. Burns." *Id.* at 48. He points out that the jury "repeatedly came back to the trial judge during deliberations with questions about expert testimony 'that relates to the physics of the accident in determining the driver of the vehicle.'" *Id.* (quoting N.T., Jury Trial, Day Two, 3/3/20, at 186) (emphasis removed).

He thus maintains that "PCRA counsel was ineffective in that she failed to identify that the scene photographs, EMT reports, and vehicle inspection photographs were not 'late discovery' or 'new photographs' but rather evidence that had been available to defense counsel for at least nine months prior to trial that he had never sought to obtain." *Id.* at 49-50 (quoting PCRA Opinion, filed 1/29/24, at 3-4, 6). He further claims that PCRA counsel was ineffective for not asking Dr. Schorr to provide an updated report and having that report admitted at the PCRA hearing "to demonstrate the prejudice

caused by trial counsel's failure to provide this material to the defense expert." *Id.* at 50.

We conclude that Burns has presented more than boilerplate arguments of PCRA counsel's alleged ineffectiveness in failing to raise trial counsel's ineffectiveness for not ensuring that the defense expert had full discovery before creating a report. There is a material issue of fact concerning when counsel had access to the physical evidence that Dr. Schorr now relies on for his updated expert opinion. As such, we conclude that remand is appropriate for further development of the record and for the PCRA court to consider the matter.

### Failure to Call Witnesses

Burns challenges PCRA counsel's failure to raise trial counsel's failure to call witnesses. He states that both PCRA and trial counsel had access to handwritten statements from two witnesses, Brennan Dougherty and Michael "Squints" Tyson. Dougherty's statement notes that he saw Eberle drink three shots of liquor and Tyson's statement reads that Burns would not have driven on the night of the accident. *See* Burns' Br. at 51 (citing Appendix M - "Dougherty Statement") and Appendix N - "Tyson Statement"). Both statements are dated February 28, 2020, with a stamp that reads "Union County Public Defender." Dougherty Statement; Tyson Statement.

Burns also states that a PDF containing text messages between Tyson and Eberle "was sent by the Union County DA's Office to the Union County Public Defender via email on February 21, 2020, the week before trial." *Id.* at

52 (citing Appendix O – "Tyson Text Messages"). He points out that in the messages Eberle "admits to taking a shot with Tessy Aikey and Mr. Burns before the accident." *Id.* at 51. In the text exchange, Eberle also states that Burns was driving and that she "was begging [Burns] to slow down." *See* Tyson Text Messages. Burns notes that Eberle testified at trial "that she was unable to consume alcohol rapidly due to gastric sleeve surgery, she only purchased four Coors Light beers," and that she did not drink anything other than beer that night. *Id.* at 52. He also points out that the EMT report states that Eberle said "that she consumed 'four beers' prior to the crash." *Id.* (citing Appendix F, Kara Eberle EMT Reports at 2). He claims that this testimony is directly contradicted by Dougherty's and Tyson's statements, which he maintains should have been introduced as impeachment evidence against Eberle to show that she lied under oath. Burns alleges that he was prejudiced by this omission because the jury could have believed that Eberle lied at trial and to the EMTs at the scene, and thus the jury "would have had a substantial basis to question" the truth of Eberle's claim that Burns was driving. *Id.* at 54 (emphasis removed).

Burns further claims that PCRA counsel was ineffective for failing to call Dougherty and Tyson as witnesses at the PCRA hearing. He maintains that the case should be remanded to supplement the evidentiary record with the statements, text messages, and testimony of Tyson and Dougherty.

To obtain relief for a failure to call witnesses, the defendant must show:

(1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

***Commonwealth v. Sneed***, 45 A.3d 1096, 1109 (Pa. 2012). "To demonstrate . . . prejudice, a petitioner must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." ***Commonwealth v. Matias***, 63 A.3d 807, 811 (Pa.Super. 2013) (*en banc*) (citation omitted).

Here, Burns fails to show that his claim has arguable merit. ***See Maddrey***, 205 A.3d at 327. Burns established that the witnesses existed, that counsel knew of the witnesses, and the prejudicial effect of the absence of their testimony. However, Burns has not shown that the witnesses were available to testify for the defense or that they were willing to testify for the defense. ***See Sneed***, 45 A.3d at 1109. As such, Burns' claim of trial counsel's alleged ineffectiveness for failing to call Dougherty and Tyson fails and in turn, his claim regarding PCRA counsel fails. ***Martin***, 5 A.3d at 183; ***Reyes***, 870 A.2d at 896. Remand is unnecessary on this matter. ***Lawrence***, 309 A.3d at 155-56.

## Cross-Examination of Witnesses

Burns argues that trial counsel failed to "effectively" cross-examine Eberle and states that counsel's "primary focus at trial should have been to attack Ms. Eberle's credibility and suggest a motive for her to lie about who was driving." Burns' Br. at 56. He points out that counsel failed to impeach

Eberle about her lies about how much she had to drink before the car crash and gives several issues that counsel failed to cross-examine Eberle about, including but not limited to:

- Why she would agree to drive Mr. Burns home that night, knowing that it was out of her way, having had no plans to see him that night.

- Her motive(s) to lie about who was driving, and whether she was aware that she could face prosecution for the same offenses as Mr. Burns had been charged with if it was determined that she was driving and under the influence at the time of the crash.

*Id.* at 57, 58; *see also id.* at 56-58. Burns notes that trial counsel testified at the PCRA hearing that "I don't think it's necessary – I think when you deal with a witness like that, you're not going to have the epiphany where she says it's lying." *Id.* at 58 (quoting N.T., PCRA Hearing, 7/24/23, at 50). However, Burns maintains that it was counsel's "responsibility to attack the credibility of Ms. Eberle and the veracity of her claim that [Burns] had been driving at the time of the crash." *Id.* at 58-59. Burns further argues that PCRA counsel was ineffective in narrowing her questioning of trial counsel to whether he cross-examined Eberle if she was wearing a seatbelt.

Burns' ineffectiveness claim fails. Burns fails to plead and prove that counsel did not have a reasonable basis for the way that he cross-examined Eberle. Though the PCRA court was not presented with this exact claim, it did address the argument that trial counsel's cross-examination of Eberle was deficient. The court determined that "[c]ounsel's defense tactics do not entitle [Burns] to relief simply because those tactics were unsuccessful." PCRA

Opinion, at 8. Counsel testified that in his opinion it would have been unwise to point out that Eberle lied and instead the better strategy was to highlight her lies to the jury by "point[ing] it out in the fact that [Eberle] has a motive to [lie] because there's a financial aspect to it, and then whatever else I have in my closing statement which obviously speaks for itself." N.T., PCRA Hearing at 51. Notably, in his closing statement, trial counsel mentioned the possible theory that Eberle lied and was trying to get money from Burns. **See** N.T., Day 2 at 121 (counsel stating "one theory would be, frankly, she's just plain mean-spirited; that she was the driver and that she set him up and she's here now lying about it and she's suing him over it for over $50,000"). Counsel also stated that referencing Eberle's prior statements could have led to her reinforcing that it was Burns who was driving. **See** N.T., PCRA Hearing, at 45.

Because his claim that trial counsel was ineffective fails, the claim of PCRA counsel's ineffectiveness is likewise meritless. **Martin**, 5 A.3d at 183; **Reyes**, 870 A.2d at 896.

Burns also argues that trial counsel failed to effectively cross-examine Trooper Brian Watkins, the chief investigator in the case. Burns maintains that trial counsel failed to cross-examine Trooper Brian Watkins on several issues including but not limited to:

- Why the only witnesses he interviewed during his investigation were Wilbur Underhill, Kara Eberle and Kristian Burns.

- Why Tpr. Watkins' investigative reports and affidavit of probable cause failed to provide the name of the other vehicle occupant, Tessy Aikey.

- Why he did not interview Tessy Aikey who had been with [Burns] and Ms. Eberle in the car prior to the crash.

- How/why in his May 30, 2018 crash report he reached the conclusion that Mr. Burns had been driving at the time of the crash though the CARS unit forensic analysis had not been completed and he had not spoken to Mr. Burns.

Burns' Br. at 61, 62; *see also id.* at 61-63. He also points out that counsel's cross-examination of Trooper Watkins consisted of only two points: 1) whether Burns cooperated with Trooper Watkins when he did not have to and 2) what kind of beer was in the vehicle. *See id.* at. 60-61; N.T., Trial, Day 1, Mar. 2, 2020, at 178-179. Burns maintains that he was prejudiced by counsel's allegedly deficient cross-examination of Trooper Watkins considering that he "made the initial determination that Mr. Burns had been driving at the time of the crash and filed subsequent[] charges against him." Burns' Br. at 64. Burns also asserts that PCRA counsel was ineffective for failing to "raise and develop the insufficiency of trial counsel's cross[-]examination" of Trooper Watkins and he was prejudiced by her failure to do so. *Id.*

This claim of ineffectiveness also fails. Burns has failed to show prejudice. *Spotz*, 84 A.3d at 312. Notably, Burns does not explain what Trooper Watkins would have testified to if counsel had cross-examined him on the above-referenced topics. Burns also has not shown that counsel did not have a reasonable basis for his strategy in cross-examining Trooper Watkins. Therefore, we conclude that Burns' claims of PCRA and trial counsel ineffectiveness warrant no relief and remand is unnecessary. *Martin*, 5 A.3d at 183; *Reyes* 870 A.2d at 896; *Lawrence*, 309 A.3d at 155-56.

- 16 -

**Commonwealth DNA Expert**

Burns asserts that trial counsel was ineffective in consenting to the Commonwealth's DNA expert, Samantha Newhart, testifying via video. Newhart was set to testify on the first day of the trial, however, she was unavailable until the next day at 1 p.m. After a discussion between the parties and the court, trial counsel agreed to Newhart testifying via video, which she did the next day. *See* N.T., Day 2, at 6-7. Burns references the trial court's order from January 22, 2020, which stated "[t]here will be no recess to allow experts to appear. No trial delays will be permitted to accommodate the attendance of experts." Trial Order, filed 1/22/20, at ¶ 7.1. Burns argues that based on the court's order and Newhart's unavailability, trial counsel could have sought to exclude Newhart's testimony. Burns maintains that this omission by counsel prejudiced him because Newhart's testimony explained that DNA found on the steering wheel airbag matched Burns, and DNA found on the passenger side matched Eberle. This testimony corroborated the Commonwealth's theory of the case and Burns maintains that had this testimony been excluded "there is more than a reasonable probability that the outcome of the trial would have been different." Burns' Br. at 68.

Burns claims that PCRA counsel was ineffective for not identifying this aspect of counsel's ineffectiveness regarding Newhart and instead focusing on whether Newhart testifying via video violated Burns' confrontation rights. Burns asserts that he was prejudiced by PCRA counsel's failure and claims that remand is necessary "for further evidentiary development of this issue[.]" *Id.*

Here, the record reveals that the trial court explained to the Commonwealth that the court's position regarding the unavailability of the witness was that "[the Commonwealth] either have a good arrangement by whatever, 8:30 tomorrow morning, or your case is going to the Jury the way it is and we're going to start with the defense case assuming – if it turns out there can't be telephone testimony from the expert starting early tomorrow morning, 9 o'clock[.]" N.T., Trial, Day 1, 3/2/23, at 189. The Commonwealth responded that "the decision you're espousing is going to keep a very important part of my case out of the case which is the DNA on these different parts of the car and this critical aspect." *Id.* Later the court addressed trial counsel stating, " . . . I don't think – well, I'm not going to speak for you, but certainly you have no obligation to agree to a delay in the Commonwealth's evidence – or to put any part of your case on before the Commonwealth's case is complete." *Id.* at 191.

At the PCRA hearing, counsel explained his reasoning for not objecting to Newhart testifying via video.

> A [Trial Counsel] Well, when you come to fact witnesses versus technical witnesses, I place more emphasis on fact witnesses being in the jury – or being in the witness box. I generally will not agree to a factual witness testifying remotely. I'm okay with technical witnesses testifying via Zoom. I can't say that's a hard and fast rule, it's not for every case; but generally the remote part of it is just that. And sometimes I think actually technical and expert witnesses lose just a little bit if they're not there in front of the jury.
>
> ***

- 18 -

A [ Trial Counsel]: . . . I never felt the DNA witness hurt us. The prosecution thinks that the DNA witness was enormously significant. From the defense side, and I still believe this, it was of no moment. Those two people -- or the people in the car were human missiles flying all over the place. I would expect DNA evidence to be found all over the vehicle. And I think that anything that was discovered, I mean to my mind I don't think it -- and I still don't think that it builds up the Commonwealth's case. It's like it would have been expected that -- I think she was the driver and he was the passenger. I would have expected to find his DNA on the driver's side. I would have expected to find her DNA on the passenger's side.

\*\*\*

A [Trial Counsel]: Well, as I indicated in my Direct testimony here, I just -- I think testimony is better if it's live; and so if it's not live, I think it loses some of its effectiveness. And when it comes to fact witnesses, yeah, I want them here because I think demeanor's more important. With professional witnesses, with experts, I don't think it's as important. I also think that if, going back to what I just said, if you're not in person, I think it diminishes it a little bit, so I'm happy with having a Commonwealth witness diminished.

N.T., PCRA Hearing at 24-25, 47. Counsel also acknowledged that the court stated its position that it would move on with the trial without the DNA expert, but counsel explained that had the court decided to do so he believed "it would have been an automatic appeal to the Superior Court." *Id.* at 23.

Q [PCRA Counsel]: [The court] indicated that if there were not arrangements that they would go forward to the Jury without that witness. At that time [the Commonwealth] stated quite vehemently that this was an essential witness to the case.

A [Trial Counsel]: I'm sure he did because I'm sure what would have happened would have been it would have been an automatic appeal to the Superior Court.

Q: On what basis?

- 19 -

A: [The Commonwealth] would have told the Judge that she kneecapped him and he could not continue with his case. As we know, when he does that, he pretty much gets a bye to the superiors which would have strung us up for another year.

*Id.* at 23-24.

Burns fails to show that counsel did not have a reasonable basis failing to ask the court to exclude Newhart's testimony. *See Maddrey*, 205 A.3d at 327. Counsel explained that Newhart testifying via video diminished her effectiveness and he believed that the DNA evidence did not hurt the case considering that "the people in the car were human missiles flying all over the place. I would expect DNA evidence to be found all over the vehicle." N.T., PCRA Hearing at 25. This claim of ineffectiveness fails and remand is not needed for further development of the issue. *Martin*, 5 A.3d at 183; *Reyes* 870 A.2d at 896; *Lawrence*, 309 A.3d at 155-56.

**Waiver of Right to Testify**

Burns' final claim alleges that PCRA counsel "ineffectively framed" Burns' waiver of his right to testify as trial counsel's failure to properly advise Burns of his reasons to testify or not. Burns' Br. at 70. Instead, PCRA counsel should have presented the issue that "trial counsel interfered with [Burns'] right to testify and induced his waiver by failing to inform him that no witnesses other than Dr. Schorr would be called by the defense[.]" *Id.* at 71. Burns notes his testimony at the PCRA hearing that he was "promised that my witnesses would take the stand" and makes the claim that "it is reasonable to believe" his testimony considering trial counsel's conduct throughout the case. *Id.* at 71-

72 (citing PCRA Hearing, at 91). He claims that he believed that other witnesses were going to testify at trial and this belief "induced his waiver of his right to testify on his own behalf." *Id.* at 72. Burns asserts that PCRA counsel should have raised trial counsel's "misleading conduct" and argues that this conduct "induced a waiver of rights that was not knowing, voluntary and intelligent." *Id.* at 73. He again suggests that the matter should be remanded for further development of the issue.

An ineffectiveness claim that counsel interfered with a defendant's right to testify requires that the petitioner show that "counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf." *Commonwealth v. Miller*, 987 A.2d 638, 660 (Pa. 2009) (citation omitted).

Here, the PCRA court made specific credibility determinations, and we must defer to its credibility determinations that are supported by the record. *Spotz*, 84 A.3d at 319 (stating appellate court must defer to credibility determinations of PCRA court supported by the record). The PCRA court found that "[Burns'] testimony about being precluded from testifying was not credible. Both Attorney Ulmer and the presiding judge advised [Burns] of his right to testify." PCRA Opinion, at 8.[2] Burns is suggesting that this Court reweigh the credibility determination by the PCRA court of his testimony.

---

[2] The PCRA court relies on its opinion following the dismissal of Burns' PCRA petition instead of a Rule 1925(a) opinion. *See* Opinion, filed 6/17/24, at 4 (unpaginated).

- 21 -

Furthermore, while Burns now presents a new reason for his decision not to testify, the record belies his claim. As he points out, the court "conduct[ed] an appropriate colloquy with Mr. Burns regarding his right to testify." Burns' Br. at 70. This colloquy included the court asking, "[M]y understanding is you do not wish to testify; is that correct?" Burns responded, "Correct. Or more so I couldn't really testify because I have no recollection of the events." N.T., Day 2, at 92. The court further explained to Burns that, "[Y]ou do understand that you have certainly the right to testify if you wish to do so[.]" *Id.* His present claim that he did not testify because counsel did not tell him that no one other than Dr. Schorr would testify on his behalf contradicts his testimony during the colloquy, and such a contradiction is not a proper basis for seeking relief. Burns fails to show that trial counsel "interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf." *Miller*, 987 A.2d at 660. Since Burns' ineffectiveness claim fails, his claim of PCRA counsel's ineffectiveness also fails. *Martin*, 5 A.3d at 183; *Reyes*, 870 A.2d at 896.

In conclusion, we vacate the order denying Burns' PCRA petition and remand for the PCRA court to consider the claim of ineffective assistance of PCRA counsel for failing to raise trial counsel's ineffectiveness regarding the defense DNA expert, Dr. Schorr.

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/01/2025